[878 NE2d 1004, 848 NYS2d 588]

PROPERTY CLERK OF THE POLICE DEPARTMENT OF THE CITY OF NEW YORK et al., Respondents, v MERV HARRIS et al., Respondents, and DELORES NEWTON HARRIS, Appellant.

Argued October 11, 2007; decided November 19, 2007

## POINTS OF COUNSEL

*Legal Aid Society,* New York City (*Steven B. Wasserman* and *Summer C. Smith* of counsel), for appellant. The innocent co-owner of a vehicle in forfeiture proceedings has a due process right to contest the need for its impoundment, and its release to

the innocent co-owner would not invariably impair or destroy a forfeiture action against the offending owner's share. (*County of Nassau v Canavan,* 1 NY3d 134; *Krimstock v Kelly,* 306 F3d 40; *Mathews v Eldridge,* 424 US 319; *Morgenthau v Citisource, Inc.,* 68 NY2d 211; *Property Clerk of N.Y. City Police Dept. v Molomo,* 179 AD2d 210, 81 NY2d 936; *Property Clerk, N.Y. City Police Dept. v Small,* 153 Misc 2d 673; *Pacheco v Serendensky,* 393 F3d 348; *Republic Nat. Bank of Miami v United States,* 506 US 80; *United States v James Daniel Good Real Property,* 510 US 43.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Julie Steiner, Leonard Koerner* and *Gabriel Taussig* of counsel), for respondents. The Appellate Division correctly held that once petitioners demonstrated, in accordance with both Second Circuit Court of Appeals' and this Court's precedents, their entitlement to retain the vehicle pending forfeiture as against the co-owner charged with using the vehicle illegally, they cannot be required to release the vehicle based on the purported innocence of the other co-owner. Such a requirement would be in direct contravention of the plain language of the Administrative Code of the City of New York, would make forfeiture virtually impossible and would dangerously allow an instrumentality of crime to continue to be used as such. (*Matter of Property Clerk of N.Y. City Police Dept. v Ferris,* 77 NY2d 428; *Pacheco v Serendensky,* 393 F3d 348; *Krimstock v Kelly,* 306 F3d 40; *County of Nassau v Canavan,* 1 NY3d 134.)

### OPINION OF THE COURT

CIPARICK, J.

In this appeal we are asked to determine whether the Property Clerk of the Police Department of the City of New York, in order to establish the right to impound a vehicle during the pendency of a civil forfeiture proceeding, is required to prove, at a postseizure retention hearing, that the co-owner of a seized vehicle is not an "innocent owner." We conclude that the City does not bear that burden, but building upon the holdings of *County of Nassau v Canavan* (1 NY3d 134 [2003]) and *Krimstock v Kelly* (306 F3d 40 [2d Cir 2002]) we also conclude that due process requires that an innocent co-owner[1] be given an opportunity to demonstrate that his or her present possessory

---

1. As used throughout this opinion, the term "innocent co-owner" is taken from the definition of "lawful claimant" in section 14-140 (e) (1) of the Administrative Code of the City of New York and denotes an individual who has not—or purports to have not—"permitted or suffered" a seized vehicle to

interest in a seized vehicle outweighs the City's interest in continuing impoundment.

## I.

Along with her husband, Merv Harris, respondent, Delores Newton Harris, is the co-owner of a 2002 Mitsubishi Montero. The Harrises acquired the Montero in March 2002 and registered it in Virginia. Since that time, the couple has made monthly payments of $600 drawn from a joint checking account to discharge their remaining debt on the vehicle. At the time these proceedings were initiated in December 2004, the Montero had a fair market value of $16,000.

On the evening of October 20, 2004, an individual working in concert with undercover New York City Police Department (NYPD) officers allegedly called Mr. Harris and asked him to deliver cocaine to 94th Street and Columbus Avenue in Manhattan. A short time later, Mr. Harris arrived in the Montero. The man approached the Montero with $40 in prerecorded buy money, gave that money to Mr. Harris, and returned to the undercover officer with a quantity of cocaine. Mr. Harris drove off but was stopped by other NYPD officers who recovered four bags of cocaine from his pants pocket and the $40 in buy money. The police arrested him, charged him with criminal sale and possession of a controlled substance in the third degree, seized the Montero and impounded it.[2]

As permitted under section 14-140 (b) of the Administrative Code of the City of New York, the NYPD's Property Clerk has retained the seized Montero as "property . . . suspected of having been used as a means of committing crime or employed in aid or furtherance [thereof]." The Property Clerk has also instituted a civil forfeiture proceeding seeking to confiscate the Montero in order to sell it at an auction (*see* 38 RCNY 12-36). As required under *Krimstock*, the City informed Mr. Harris of its intent to impound the Montero throughout the forfeiture proceeding (*see* 306 F3d at 68). Mr. Harris then made a timely demand for a *"Krimstock"* hearing,[3] where it is the City's burden to establish its right to continued impoundment by a

---

be used in the commission of a crime and who was not—or purports to have not been—a "participant or accomplice" in such crime.

**2.** All charges against Mr. Harris have been dismissed for failure to prosecute.

**3.** In *Krimstock*, the Second Circuit held that after a vehicle is seized, the Due Process Clause requires the City to provide "claimants" with a "prompt

preponderance of the evidence (*see Krimstock v Kelly*, 2005 US Dist LEXIS 43845, *4).[4]

On December 21, 2004, both Harrises appeared at the *Krimstock* hearing before an administrative law judge of the City's Office of Administrative Trials and Hearings (OATH).[5] In addition to evidence regarding the alleged October 20 cocaine transaction, the City presented evidence that, over a span of 15 years, ending in 1997, Mr. Harris had been arrested 10 times and served two prison terms for drug-related offenses. After offering evidence regarding Mr. Harris's culpability, the City called respondent to testify in anticipation of her husband's claim that the vehicle should be returned to his wife because of her status as an innocent co-owner.

During her direct testimony, respondent stated that she married Mr. Harris in 2002 and was aware both that her husband was involved in at least one "drug case" and imprisoned for a drug offense prior to their marriage. She further testified that Mr. Harris had been arrested on "drug charges" during their marriage and that she posted bond in connection with those charges.[6] Turning to her use of the Montero, she testified that she drove the vehicle "[e]very so often," usually on a "weekly

---

retention hearing" to "test the probable validity of continued deprivation of their vehicles" (306 F3d at 69). But the court declined to "dictate a specific form" for that hearing (*id.*).

On remand, the United States District Court for the Southern District of New York set forth the procedure governing *"Krimstock"* hearings (*see generally Krimstock v Kelly*, 2005 US Dist LEXIS 43845 [SD NY 2005]). As relevant here, either a person in lawful possession of the vehicle when it is seized or the vehicle's registered and/or title owner may appear at a retention hearing that considers three issues:

> "whether probable cause existed for the arrest of the vehicle operator; whether it is likely that the City will prevail in an action to forfeit the vehicle[;] and whether it is necessary that the vehicle remain impounded in order to ensure its availability for a judgment of forfeiture" (*id.* at *4).

4. The Southern District order operative in this case was issued January 22, 2004. Currently, however, *Krimstock* hearings are governed by that court's November 29, 2005 "Second Amended Order and Judgment" (*id.* at *1). With respect to the procedures relevant here, the orders are not substantively different. Accordingly, we cite herein only to the currently operative order.

5. Ms. Harris was not represented by counsel during the *Krimstock* hearing. Prior to the hearing, counsel for Mr. Harris offered to represent her. But at the hearing he declined to do so because of a purported "conflict of interest" between respondent and her husband.

6. It appears that in responding to this question, respondent was referring to the October 20, 2004 drug charge. Mr. Harris's criminal history report—rap sheet—shows no arrests between August 17, 1997 and that date.

basis." She also offered testimony regarding the schedule of payments for the Montero and stated that she and her husband had made timely $600 monthly payments, drawn from their joint checking account.

Following the hearing, OATH ordered the Montero released to respondent even though it found that the City had established each of the three prongs of the *Krimstock* analysis against Mr. Harris.[7] But that showing was immaterial, OATH held, because the City failed to discharge its additional "burden of proof that [respondent] was not an innocent owner." According to OATH, release was appropriate because the City offered no evidence that she "knew or should have known that her husband was going to use the vehicle to sell narcotics."[8] The City then commenced a CPLR article 78 proceeding in Supreme Court seeking to annul OATH's determination as "arbitrary, capricious, and contrary to law."

Supreme Court upheld OATH's ruling, finding that *Krimstock* "made it crystal clear that the [City] has to anticipate and test the merits of a potential innocent owner defense" at a retention hearing (7 Misc 3d 1032[A], 2005 NY Slip Op 50848[U], *4). Accordingly, Supreme Court denied the City's article 78 petition, lifted a stay enjoining release of the vehicle to respondent and dismissed the proceeding. The Appellate Division reversed. It concluded that the City was entitled to retain the vehicle during the pendency of the forfeiture proceeding de-

---

7. Specifically, OATH found that:
   "[t]he unrebutted evidence established that the police had probable cause for Mr. Harris's arrest . . . the Department presented sufficient evidence to show that there was a likelihood of success in a forfeiture action and a need to retain the vehicle [and that] [t]he preponderance of the evidence demonstrated that Mr. Harris committed a felony and the vehicle was an instrumentality of that crime."

8. OATH explained that the City failed to meet its burden of proof on the issue of innocent ownership because:
   "There was no allegation that Ms. Harris was present during the sale . . . There was no evidence that Ms. Harris was aware of any ongoing narcotics use or sale by her husband. Nor was there any evidence that Ms. Harris had ever been involved in any narcotics activity. There was no evidence that Ms. Harris had ever been arrested or convicted of any crime. Nor did the Department inquire about the Harrises' income. The Department did not even ask Ms. Harris what she or her husband did for a living [and] [t]here was no evidence about their other expenses . . .
   "Moreover there was no evidence that, prior to the instant offense, [Mr. Harris] had ever used a car to commit a crime."

spite respondent's claims of innocent ownership because it "made the requisite showing against Mr. Harris" (34 AD3d 215, 217 [1st Dept 2006]).

Further, the Appellate Division reasoned that if the City were required to release vehicles to innocent co-owners, its right to a share of future proceeds from an auction of seized vehicles "would, as a practical matter, be destroyed" (34 AD3d at 217). Thus, the court concluded that "[r]egardless of Ms. Harris's innocence . . . the City is entitled to the protection of its potential right to forfeiture of Mr. Harris's interest in the vehicle" through continued impoundment (id.). A contrary conclusion, the court stated, would make forfeiture "virtually impossible" and was unnecessary because innocent co-owners, like respondent, are entitled to a share of auction proceeds corresponding to their interest in the vehicle (id. at 218). We granted leave to appeal and now affirm, for different reasons.

## II.

Relying upon our decision in *Canavan* and the Second Circuit's decision in *Krimstock*, respondent argues that due process requires that OATH balance the hardship that would befall an innocent co-owner due to the loss of a present possessory interest in using an impounded vehicle against the City's need to retain that vehicle. Petitioner contends, however, that the only process due innocent co-owners is that established in *Canavan* and *Krimstock*, namely a prompt retention hearing wherein the City must establish that "probable cause existed for the defendant's initial warrantless arrest, that it is likely to succeed on the merits of the forfeiture action, and that retention is necessary to preserve the vehicle from destruction or sale during the pendency of the [forfeiture] proceeding" (*Canavan*, 1 NY3d at 144-145, citing *Krimstock*, 306 F3d at 67; *see also Krimstock*, 2005 US Dist LEXIS 43845, *4). Petitioner claims that once these findings are made against a "criminal co-owner," innocent co-ownership "makes no difference."

Because we agree with respondent that an innocent co-owner's present possessory interest in an impounded vehicle may, in particular circumstances, be constitutionally significant, we conclude that such co-owners are also entitled to notice and

the opportunity to be heard at a *Krimstock* hearing.[9] But we hold that an innocent co-owner has the burden of proving that a present possessory interest outweighs the City's need to impound the vehicle to (i) deter future criminal conduct, and to (ii) safeguard its right to future auction proceeds by preventing theft, sale, destruction or loss. Respondent did not carry that burden here.

The City has broad authority to retain property following seizure (*see* Administrative Code of City of NY § 14-140 [b]). It is entitled to retain "all property . . . suspected of having been used as a means of committing crime or employed in aid or furtherance of crime" (*id.*). Section 14-140 (b) "applies to all levels of crime, not just felonies, and to all types of crimes" (*Krimstock*, 306 F3d at 44). Although the City is required to institute a civil forfeiture proceeding within 25 days after a "claimant"[10] makes a formal demand for return of seized property, that proceeding is commonly stayed until the conclusion of the underyling criminal action (*see* 38 RCNY 12-36 [a] [i]-[ii] [stay may be requested even if forfeiture proceeding was initiated "before . . . criminal proceedings"]). Thus, seized vehicles may be impounded for many months (*see e.g. Krimstock*, 306 F3d at 46 [citing examples in which cars remained impounded between 2½ and 11 months during forfeiture proceeding]).

In *Canavan*, we struck down a county's civil forfeiture statute on due process grounds because it "contain[ed] no limitation of

**9.** Our holding here is predicated upon the significant interests of innocent co-owners that were previously recognized in *Canavan* and *Krimstock* (*see* at 244-245, *infra*). But we note that the U.S. Supreme Court's decision in *Bennis v Michigan* (516 US 442 [1996]), which considered a due process challenge brought by a "joint owner" whose vehicle was forfeited because her husband used it to solicit a prostitute, does not mandate a different result (*see id.* at 443). As the Second Circuit explained in *Krimstock*, *Bennis*'s holding that a Michigan forfeiture statute did not violate the Federal Due Process Clause was based, in part, upon the Michigan court's " 'remedial discretion' to consider whether forfeiture of a vehicle would leave its owner or owners without transportation" (*Krimstock*, 306 F3d at 56 n 15; *see also Bennis*, 516 US at 453 [reasoning that the force of petitioner's argument that the statute unfairly relieved prosecutors of "the burden of separating co-owners who are complicit in the wrongful use of property from innocent co-owners . . . is reduced . . . by the Michigan Supreme Court's confirmation of the trial court's remedial discretion"]). Our holding today provides OATH with a similar "remedial discretion."

**10.** The Rules of the City of New York define "claimant" as "the person from whose person or possession property, other than contraband, was taken or obtained" (38 RCNY 12-31) or the claimant's "representative authorized by a notarized writing to claim th[at] property" (38 RCNY 12-32 [e] [ii]).

forfeiture liability for innocent owners" (*Canavan*, 1 NY3d at 143, quoting *Krimstock*, 306 F3d at 57). In addition, we held that due process required that "defendants" be afforded a prompt postseizure retention hearing. Although our holding referred only to "defendants[']" rights, it was predicated largely upon the potentially "significant" interest that innocent owners, and household members, have in impounded vehicles subject to lengthy impoundments (*Canavan*, 1 NY3d at 142-143 ["(T)he private interest affected by the deprivation of an automobile may be significant. When cars are owned by others or shared among household members . . . seizure may affect not only a culpable defendant, but also other innocent parties"]; *see also id.* at 144 [reasoning that "a hearing (is) required to ensure that . . . innocent owners are not deprived for months or years of cars ultimately proved not to be subject to forfeiture"]).

Our concern for the interest of innocent owners echoed that of the Second Circuit in *Krimstock*. In ruling that due process required a prompt postseizure retention hearing, the Second Circuit emphasized the "plight of innocent owners" and explained that the risk of erroneous deprivation is heightened because section 14-140 (b) permits the City to retain seized vehicles without giving such owners the opportunity to prove that they did not "permit" or "suffer" the criminal use of their vehicles (*see Krimstock*, 306 F3d at 48, 56-58, 63).

*Canavan* and *Krimstock* do not refer specifically to the due process rights of innocent co-owners, the issue with which we are confronted here. Instead, *Canavan* held that "defendants"— who presumably could be sole owners, co-owners, or merely in lawful possession of a seized vehicle—had a due process right to a hearing (1 NY3d at 144). And *Krimstock* refers to the due process right of "claimants" (*e.g.* 306 F3d at 68, 69) who are defined in the order currently governing *Krimstock* hearings as "either the person from whom the vehicle was seized . . . or [its] owner" (2005 US Dist LEXIS 43845, at *7).

Nonetheless, both of these cases strongly suggest that innocent co-owners' interests must be fully considered at a *Krimstock* hearing. For example, the *Krimstock* court defined the term "innocent owner" as "a person who has an *ownership interest* in property threatened with civil forfeiture but who neither participated in nor permitted or suffered the alleged illegal use of the property" (306 F3d at 48 n 9 [emphasis added]). Similarly, we noted the potentially significant interest at stake

when impounded vehicles "are owned by others" (*Canavan*, 1 NY3d at 142). Despite these strong indications, however, to determine what process is due an innocent co-owner of an impounded vehicle, we must consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the probable value of other procedural safeguards; and (3) the government's interest" (*Canavan*, 1 NY3d at 142, citing *Mathews v Eldridge*, 424 US 319, 335 [1976]). Each of these factors militates in favor of permitting innocent co-owners to contest impoundment.

## III.

As to the first consideration, an innocent co-owner's present possessory interest in a vehicle "may be significant" (*see Canavan*, 1 NY3d at 142). "[A]utomobiles are often an essential form of transportation and, in some cases, critical to life necessities, earning a livelihood and obtaining education" (*id.* at 143). This interest is not diminished by the fact that title to the vehicle is held jointly (*see id.* at 142-143 [noting that "(w)hen cars are owned by others or shared among household members . . . seizure may affect not only a culpable defendant, but also other innocent parties"]; *Fuentes v Shevin*, 407 US 67, 86 [1972] [due process protection extends to *"any significant property interest"* (emphasis added)]; *Bennis v Michigan*, 516 US 442, 473 [1996, Kennedy, J., dissenting] [concluding that "the automobile . . . is a practical necessity in modern life for so many people" and that "nothing supports the suggestion that the value of . . . co-ownership is so insignificant as to be beneath the law's protection"]). Indeed, the Second Circuit recently held that a lienholder's contingent possessory interest in a seized vehicle is "considerable" and that lienholders have a due process right to be heard in forfeiture proceedings brought under 38 RCNY 12-36 (*Ford Motor Credit Co. v NYC Police Dept.*, 503 F3d 186, 194 [2d Cir 2007]). That conclusion only underscores the potential importance of the present possessory interest of innocent co-owners.

Contrary to the Appellate Division's view, the prospect of a proportional payment of future forfeiture proceeds does not, in most cases, sufficiently protect innocent co-owners. That payment may not compensate for an innocent co-owner's "interest in continued possession and use" of the vehicle during impoundment (*Fuentes*, 407 US at 86; *see also Krimstock*, 306 F3d at 64 ["(A)n owner cannot recover the lost use of a vehicle by prevail-

ing in a forfeiture proceeding"]; *cf. Ford Motor Credit*, 503 F3d at 191 [rejecting City's contention that lienholder's only cognizable interest was that of "sale proceeds" because lienholders "ha(ve) a property interest in the present value of a seized vehicle"]).

As a second consideration, if an innocent co-owner is not permitted to contest impoundment, there is a substantial risk that erroneous deprivation of a present possessory interest in a vehicle will occur. A postseizure retention hearing is meant not only to determine whether probable cause exists for the initial seizure of the vehicle, but also "whether other measures, short of continued impoundment, would satisfy the legitimate interests of the City in protecting . . . vehicles from sale or destruction" (*Krimstock*, 306 F3d at 68). The answer to the second inquiry depends, in part, upon whether "less drastic measures than deprivation *pendente lite* are available and appropriate" (*see id.* at 44).

Innocent co-owners possess highly relevant evidence—unknown to the City—as to that inquiry. For example, impoundment may be inappropriate if an innocent co-owner relies upon continued use of the impounded vehicle to perform essential daily activities—such as earning a livelihood, obtaining an education, or receiving necessary medical care (*cf. Canavan*, 1 NY3d at 143; *see also Krimstock*, 306 F3d at 49 ["the City might succeed in showing . . . probable cause for seizing the vehicle . . . yet be unable to establish the probable validity of continued deprivation . . . in the face of proof of innocent ownership"]). Innocent co-owners are entitled to present and OATH is required to consider such highly relevant evidence to "protect against an erroneous deprivation of a claimant's possessory interest" (*Krimstock*, 306 F3d at 62; *see also United States v James Daniel Good Real Property*, 510 US 43, 55 [1993] ["No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case . . . and opportunity to meet it"]). This is especially true here, because, as we noted in *Canavan*, "greater procedural safeguards are of particular importance where . . . the [g]overnment has a direct pecuniary interest in the outcome of the proceeding" (1 NY3d at 143 [internal quotation marks omitted]).

Turning to the third consideration, we acknowledge that the government's interests in preventing an impounded vehicle's future use as the instrumentality of a crime and preventing

against loss, theft, sale, or destruction are significant. But these interests will not always trump an innocent co-owner's present possessory interest. Instead, OATH must balance both sets of interests to determine whether continued retention to prevent future criminality is "justifiable" and whether means other than retention such as posting a bond or a temporary restraining order prohibiting the sale or destruction of the vehicle would adequately protect the government's interest in future forfeiture proceeds (*see Canavan*, 1 NY3d at 144).

In concluding that innocent co-owners have a due process right to contest impoundment of their vehicles, we reject the Appellate Division's claim that recognizing such a right would "as a practical matter . . . destroy[ ]" the City's interest in seized vehicles and make forfeiture "virtually impossible" (34 AD3d at 217, 218). Due process requires a balancing of interests. Just as the City's interests must be considered, so too must an innocent co-owner's. Exclusion of either would threaten "[t]he purpose of an adversary hearing[, which] is to ensure the requisite neutrality that must inform all governmental decision-making" (*James Daniel Good*, 510 US at 55).

Thus, we hold that an innocent co-owner may be entitled to release of an impounded vehicle if such a co-owner can demonstrate by a preponderance of the evidence that he or she: (i) is a registered and/or titled co-owner; (ii) was not a "participant or accomplice" in the underlying offense and did not "permit[ ]" or "suffer[ ]" the vehicle to be "used as a means of committing crime or employed in aid or furtherance of crime" (*see* Administrative Code of City of NY § 14-140 [b], [e] [1]); and that (iii) continued deprivation would substantially interfere with his or her ability to obtain critical life necessities, such as earning a livelihood, obtaining an education, or receiving necessary medical care.

Although we acknowledge that application of this test is inherently fact-intensive, some general guideposts are useful. With respect to the second inquiry, regarding complicity, we have explained in a different context that "[s]ufferance . . . implies knowledge or the opportunity through reasonable diligence to acquire knowledge" (*People ex rel. Price v Sheffield Farms-Slawson-Decker Co.*, 225 NY 25, 30 [1918, Cardozo, J.]). As regards continued deprivation, a showing of undue prejudice is required. Thus, OATH must determine whether an innocent co-owner has adequate access to other means of transportation in order to accurately determine whether continued impoundment will substantially interfere with critical life necessities.

Our decision here is a narrow one, concerned only with due process protection of innocent co-owners' present possessory interest in the use of impounded vehicles to obtain critical life necessities. We are not being called upon to consider the practice at forfeiture proceedings, where—as both parties acknowledge—an innocent co-owner may prove an entitlement to a share of auction proceeds, but be unable to obtain release of a seized vehicle. The authority of the government to confiscate property even if that property is owned in whole or part by an innocent owner is well settled and we do not seek to cast doubt upon it here.

## IV.

■ Applying the standard announced above to the present case, we conclude that the City established a prima facie case for impoundment by showing probable cause for the Montero's seizure, a likelihood of success in the forfeiture proceeding and the necessity for continued impoundment. Having made this showing as against Mr. Harris, it does not bear the burden of proving that respondent was not an innocent co-owner. Rather, the burden of proof shifted to respondent and it was incumbent upon her to prove by a preponderance of the evidence that she was an innocent co-owner who would suffer a substantial hardship due to continued impoundment. This she failed to do.

Here, the evidence was sufficient to establish respondent's co-ownership. In addition, the evidence supported the conclusion that respondent was not complicit in the narcotics transaction because there was no proof that she knew or reasonably should have known that the Montero was being used to distribute cocaine in 2004, more than seven years after Mr. Harris's last drug-related arrest. But respondent failed to show that her access to critical life necessities would suffer substantially as a result of continued impoundment. When asked to describe her use of the Montero, respondent testified that "[i]t vari[ed]" and that she used the car "[e]very so often . . . [m]aybe [on] a weekly basis." Thus, respondent failed to show that she depended on the Montero as an "essential form of transportation . . . critical to life necessities" (*Canavan*, 1 NY3d at 143). Accordingly, in this case, the City's interest in deterrence of future criminal conduct involving the Montero and in preserving it for sale at a later auction outweighed Ms. Harris's present possessory interest. Therefore, the Appellate Division was correct to hold that release is not warranted here.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

SMITH, J. (concurring). The question here is not what we think is the best possible way to accommodate the conflicting interests of the City of New York and Ms. Harris. The question is the constitutionality of a provision of the New York City Administrative Code that, as interpreted by both parties, allows the City to keep the car during the pendency of proceedings to forfeit Mr. Harris's interest in it. The majority, in substance, upholds the Code provision as applied to Ms. Harris but says it cannot be validly applied to innocent co-owners who make a stronger showing of hardship than Ms. Harris has. Since I do not believe this Code provision is unconstitutional as applied to any innocent co-owners, I concur only in the result.

New York City Administrative Code § 14-140 (b) says that "all property or money suspected of having been used as a means of committing crime or employed in aid or furtherance of crime" shall be given to and kept by the City's Property Clerk. Section 14-140 (e) (1) says that any such property "that shall remain in the custody of the property clerk for a period of three months without a lawful claimant entitled thereto shall . . . be sold at public auction," and the proceeds paid to the City. A person who "permitted or suffered" the criminal use of the property, or who was a participant or accomplice in it, "shall not be deemed to be the lawful claimant entitled" to the property.

The Administrative Code does not specifically address the rights of a person who is a "lawful claimant entitled" to *part* ownership of the property, and the application of the provision to that situation is not self-evident. But the City has interpreted it to mean that, in such a case, the property may be held by the Property Clerk and sold, and that after the sale the co-owner should receive her share of the proceeds. This reading of the legislation seems plausible, and Ms. Harris does not dispute it. She argues only that the retention of the property pending sale violates her due process rights. The question presented, then, is whether a state may constitutionally retain and sell an instrumentality of crime that is owned partly by an innocent person and partly by a guilty one.

The answer to that question under the United States Constitution is not in doubt. It follows a fortiori from the Supreme Court's decision in *Bennis v Michigan* (516 US 442 [1996]). There, the Court reached the conclusion—shocking at first

glance—that, when a car is used to commit a crime, a state may sell it and keep all the proceeds, even though the owner of the car is completely innocent. The Court said that "a long and unbroken line of cases holds that an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to be put to such use" (516 US at 446). Certainly, if a state may permanently deprive an innocent owner of her property, it may temporarily deprive an innocent co-owner like Ms. Harris—and that is all that New York City's Administrative Code provision would do.

I find the majority's attempt to distinguish *Bennis* as limited to cases where a trial court has "remedial discretion" to consider hardship (majority op at 244 n 9) completely unconvincing; the holding of *Bennis* is very clear. The majority might more persuasively argue that we should reject *Bennis* and adopt a contrary interpretation of the Due Process Clause of the New York Constitution (art I, § 6) (*see People v P.J. Video*, 68 NY2d 296 [1986]). Indeed, the Court in *Bennis* itself expressed discomfort with its holding, saying that the innocent owner's "argument, in the abstract, has considerable appeal" (516 US at 453). *Bennis* was based on history and precedent; the Court concluded "that the cases authorizing actions of the kind at issue are 'too firmly fixed in the punitive and remedial jurisprudence of the country to be now displaced' " (*id.* at 453, quoting *J. W. Goldsmith, Jr.-Grant Co. v United States*, 254 US 505, 511 [1921]).

Like the majority of the Supreme Court in *Bennis*, I dislike the result, but think it is correct. The rule that the instrumentality of a crime may be forfeited to the state, regardless of the innocence of its owner, has existed in Anglo-American law longer than the Due Process Clause. There are excellent reasons to change it, but it should be changed by legislation, not by novel judicial interpretations of the Constitution. I would adhere to *Bennis* as a matter of state constitutional law, saying of our State Constitution what Justice Thomas, concurring in *Bennis*, said of the federal one: "[T]he . . . Constitution does not prohibit everything that is intensely undesirable" (516 US at 454).

But we do not need to go as far as *Bennis* went to uphold the validity of the legislation in this case. This legislation has removed much of the unfairness from the ancient law of forfeiture. It gives no rights to the City against an innocent *sole* owner of property; Ms. Harris would face no problem recovering

her car, had she not chosen to share ownership with a man who turned out to be a drug dealer. And even co-owners suffer only a temporary loss of their property; Ms. Harris will ultimately get her share of the sale proceeds. The injury to an innocent co-owner from being denied the use of the car pending sale is real, but it can be justified where—as will usually be true—it is necessary to protect the City's interest in the property; surely, few automobiles released to co-owners are likely to be voluntarily returned for a forfeiture sale. Thus, even if I were prepared to depart from *Bennis* as a matter of state constitutional law, I would find that this City Administrative Code provision, as applied to innocent co-owners of vehicles, is not unconstitutional.

In saying that it is unconstitutional—not as applied to Ms. Harris, but as applied to a hypothetical co-owner who could make a stronger showing of hardship—the majority relies on *Krimstock v Kelly* (306 F3d 40 [2d Cir 2002]) and *County of Nassau v Canavan* (1 NY3d 134 [2003]). Neither of these cases, in my view, establishes an innocent co-owner's substantive right to possession of a car—indeed, *Krimstock* obviously could not do so, for the *Krimstock* court was interpreting the federal Due Process Clause and was thus bound by *Bennis*'s holding. *Krimstock* and *Canavan* involved procedural, not substantive, rights; their central holding is that the owner of an automobile alleged to be the instrumentality of a crime has a right to a prompt hearing on whether the allegation is likely to be proved true. Neither case decides that, even if the allegation of criminality is true, the car must be returned to a co-owner not connected with the criminal conduct.

I would therefore hold that, where the City proves at a *Krimstock* hearing, as it did here, the likelihood that a car was used by one of its owners to commit a crime, the City is not constitutionally required to release the car to an innocent co-owner, and I would affirm the Appellate Division's order on that ground.

Chief Judge KAYE and Judges GRAFFEO, PIGOTT and JONES concur with Judge CIPARICK; Judge SMITH concurs in result in a separate opinion in which Judge READ concurs.

Order affirmed, with costs.