# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
    :
          v.    :   No. 1229 C.D. 2016
    :   Argued:  September 13, 2017
$301,360.00 U.S. Currency and    :
One 2011 Lexus, RX350,    :
VIN #2T2BK1BA48C081250    :
    :
Appeal of: Clarissa Vasquez    :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
    HONORABLE RENÉE COHN JUBELIRER, Judge
    HONORABLE ROBERT SIMPSON, Judge
    HONORABLE P. KEVIN BROBSON, Judge
    HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE ANNE E. COVEY, Judge[1]
    HONORABLE MICHAEL H. WOJCIK, Judge


OPINION BY
JUDGE COHN JUBELIRER          FILED:  April 4, 2018

In this appeal, we examine the Commonwealth's burden of proof to justify forfeiture of property under the Controlled Substances Forfeiture Act (Forfeiture Act),[2] when, at a traffic stop on a known drug route, no controlled substances were

---

[1] This case was argued before an *en banc* panel of the Court that included former Judge Joseph M. Cosgrove.  Because Judge Cosgrove's service on the Court ended January 1, 2018, this matter has been submitted on briefs to Judge Covey as a member of the panel.

[2] 42 Pa. C.S. §§ 6801–6802.  We note that while this appeal was pending, the General Assembly repealed those sections of the Forfeiture Act by the Act of June 29, 2017, P.L. 247, effective July 1, 2017.  The Forfeiture Act is now codified at 42 Pa. C.S. §§ 5801-5808.  However, the prior statute remains applicable in this appeal and is referenced herein as the Forfeiture Act.

found and no arrests were made, although $301,360 in cash was found hidden in a secret compartment in the vehicle. The Court of Common Pleas of Monroe County (trial court) found that the cash and vehicle had been used in illegal drug trafficking in violation of the Controlled Substance, Drug, Device and Cosmetic Act (Drug Act),[3] based on 27 "indicators" of illegal activity. Although we agree that the presence of this cash, under the totality of the circumstances here, is highly suspicious, we cannot find that these suspicions are sufficient to establish the requisite substantial nexus between the cash and vehicle and violations of the Drug Act. We must therefore reverse.

## I.    Background

On June 11, 2014, Enrique Laporte (Laporte) was driving west with his passenger, Zaida Lopez (Ms. Lopez), both New York residents, on Interstate 80 in Monroe County, Pennsylvania, in a 2011 Lexus RX350[4] (Lexus) later found to be titled in the name of Luis Lopez and registered to Clarissa Vasquez (Vasquez), when he was pulled over for tailgating. During the traffic stop, Pennsylvania State Police (PSP) Corporal Nicholas Cortes (Corporal Cortes) observed numerous indicators of criminal activity, including, *inter alia*, the overwhelming odor of air fresheners, various prayer cards in the dashboard area, Laporte's tattoos,[5] the vehicle traveling on a known drug route, and the driver's and passenger's criminal histories and

---

[3] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101-780-144.

[4] The vehicle's identification number (VIN) is #2T2BK1BA48C081250.

[5] Laporte's tattoos included the following: one reading "Dirty Money" with money bags next to it; one of Yosemite Sam holding money bags; one of a gun; one reading "Money is the Root of all Evil"; one of Papa Smurf holding a gun; one of a figure surrounded by marijuana; and one that appeared to be of Santa Muerte. The trial court explained, based on Corporal Cortes' testimony, that Santa Muerte is a so-called "narco saint" to whom one engaging in the trafficking of drugs or drug paraphernalia might pray for safe passage. (Trial Ct. Op. at 4.)

inconsistent stories, which he opined connected Laporte and Ms. Lopez to illegal drug trafficking. Corporal Cortes sought permission to conduct a search of the Lexus. After Laporte consented to the search, Corporal Cortes and another trooper discovered thirteen vacuum-sealed and separately duct-taped packages containing the $301,360 (Cash) in a hidden compartment between the back seat and cargo area of the Lexus. PSP seized the Cash and Lexus. Laporte and Ms. Lopez denied ownership or knowledge of the Cash and signed currency disclaimer forms to that effect. Laporte received a warning for tailgating, and he and Ms. Lopez were released. It is undisputed that no drugs or drug paraphernalia were found in the vehicle, and no criminal charges were ever filed in relation to the seized Cash or Lexus. A week later, an ion scan of the Cash was performed and revealed trace amounts of four different controlled substances, including cocaine, heroin, procaine, and tetrahydrocannabinol (THC). An ion scan of the compartment revealed trace amounts of heroin and THC.

The Commonwealth filed a petition for forfeiture and condemnation in September 2014. Vasquez, who was not present in the vehicle during the traffic stop, challenged the forfeiture. Upon consent of Vasquez, the Commonwealth filed an Amended Petition for Forfeiture and Condemnation (Amended Petition) in December 2015, averring that the owner of both the Cash and Lexus was unknown but that the Lexus was registered to Vasquez at the time of the seizure and that Laporte and Ms. Lopez denied ownership or knowledge of the Cash and signed disclaimer forms to that effect. (Am. Petition ¶¶ 5(A)-(B), 7(G).) The Commonwealth maintained that the Cash was "furnished or intended to be furnished by any person in exchange for a controlled substance, in violation of the" Drug Act, "was proceeds traceable to such an exchange," or was "used or intended to be used

3

to facilitate any violation of [the Drug] Act, or is otherwise subject to forfeiture under the [Drug Act]."[6] (Am. Petition ¶ 8.)

Vasquez filed an Answer and New Matter to the Amended Petition, admitting that the Lexus was registered to her at the time of the seizure and denying that the owner was unknown. She averred lawful ownership of the Lexus and the Cash and, accordingly, requested that all of the seized property be returned to her.

In February 2016, the Commonwealth filed an Answer to the New Matter, acknowledging, *inter alia*, that PSP had not filed any criminal charges as a result of the seizure but denying that there was nothing illegal found in the Lexus, in that significant residual amounts of numerous controlled substances were discovered, through the use of ion scans, on the seized Cash and in the Lexus. In addition, the Commonwealth learned through discovery that the Lexus was titled in the name of Luis Lopez in September 2014 but registered to Vasquez. The matter was scheduled for trial.

Prior to trial, Vasquez filed two motions *in limine* on March 21, 2016. In her first motion *in limine*, Vasquez argued that the forfeiture of the Cash and Lexus constitutes an excessive fine. (Reproduced Record (R.R.) at 22a-23a.) Vasquez's second motion *in limine* sought to preclude the Commonwealth from presenting evidence, through the testimony of Staff Sergeant Jennifer Marsh of the Pennsylvania Army National Guard's Counter Drug Joint Task Force (National Guard), who conducted the ion scans of the Cash and compartment and who had been deposed by Vasquez. Vasquez challenged Staff Sergeant Marsh's qualifications as an expert and the methodologies used in scanning the Cash and

---

[6] These quoted provisions of the Forfeiture Act relate only to the forfeiture of money. *See* 42 Pa. C.S. § 6801(a)(6)(i)(A), (B). However, in its Amended Petition, the Commonwealth maintained that both the Cash **and Lexus** are subject to forfeiture. (*See* Am. Petition ¶ 8.)

4

compartment, including, *inter alia*, Staff Sergeant Marsh's use of only Pennsylvania's casual contact level for cocaine found on currency in general circulation, her alleged failure to follow the same procedures utilized in conducting ion scans in banks, the absence of any evidence that the seized Cash was circulated in Pennsylvania, and possible cross-contamination. (*Id.* at 17a-21a.) The trial court did not rule on the motions *in limine*.

Subsequently, the Commonwealth filed a Motion for Order of Forfeiture, acknowledging that Vasquez remained the only person who had sought return of the Cash and Lexus, characterizing Vasquez as "a sham claimant," and averring that Laporte, Ms. Lopez, and Luis Lopez had not filed an answer or otherwise asserted any claim to the Cash or Lexus.[7] (Motion for Order of Forfeiture, R. Item 49.) On March 30, 2016, the trial court issued an order declaring that "[a]ll claims of right, title and interest of Enrique Laporte, Zaida Lopez and Luis Lopez in the . . . [Cash and Lexus] is . . . terminated, revoked and rendered null and void." (Trial Ct. Order, Mar. 30, 2016, R. Item 49.)

A Non-Jury Trial was held on April 6, 2016, at which the Commonwealth presented the testimony of Corporal Cortes and Staff Sergeant Marsh of the National Guard.[8] It also presented eleven exhibits, which included a New York State Department of Motor Vehicles (DMV) record showing that the Lexus is registered

---

[7] We note that the January 4, 2016 rule to show cause was issued against Laporte and Ms. Lopez **only**, not Luis Lopez or Vasquez. (R. Item 34.)

[8] The Commonwealth also presented the testimony of Trooper Javier Garcia of the PSP Southeast Strike Force drug unit, who is fluent in Spanish, interviewed Laporte and Ms. Lopez, and explained the disclaimer forms to them; Trooper Thomas Winnberg of the PSP asset forfeiture unit, who maintained the chain of custody of the Cash; and Thomas Liszkiewicz, a fingerprint specialist with the Department of Homeland Security, Immigration and Customs Enforcement Forensic Laboratory, who processed a partial fingerprint belonging to Luis Lopez, which was found on a piece of duct tape on one of the packages found in the compartment.

to Vasquez and titled in Luis Lopez's name, and an excerpt from Vasquez's deposition. Vasquez did not testify at trial, nor did she present any witnesses or evidence on her own behalf.

Following the Non-Jury Trial, the trial court granted the Commonwealth's Amended Petition. The trial court determined that the Commonwealth established a substantial nexus under the Forfeiture Act based upon evidence of 27 indicators of criminal activity, including the ion scan evidence, that caused it to believe that the Cash and Lexus were connected to illegal drug activity. (Trial Ct. Op. at 17-18.) Specifically, with regard to the Cash, the trial court found, based upon the totality of the circumstances, that the Cash was "furnished or intended to be furnished" by a person in exchange for controlled substances or "used or intended to be used to facilitate" violations of the Drug Act, stating further that it "would have to suspend all common sense, logic, and reason to find this [Cash] is not connected to violations of the [Drug] Act." (*Id.* at 19.) Regarding the Lexus, the trial court relied upon the same circumstantial evidence as the Cash to "find a sufficient or substantial nexus between the [Lexus] and facilitation of a [Drug Act] violation." (*Id.* at 20.) The trial court also determined that Vasquez failed to rebut the presumption of forfeiture by proving the innocent owner defense under Section 6802(j) of the Forfeiture Act, 42 Pa. C.S. § 6802(j).

Vasquez appealed,[9] arguing, *inter alia*, that the trial court erred in: (1) determining that the Commonwealth met its burden of establishing a substantial nexus between the seized Cash and Lexus and a violation of the Drug Act; (2) finding

---

[9] Our review of a forfeiture appeal "is limited to determining whether the findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law." *Commonwealth v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 529 (Pa. 2005).

a rebuttable presumption in favor of forfeiture; and (3) not finding that the forfeiture of the Cash and Lexus violates the Eighth Amendment to the United States Constitution and Article I, Section 3 of the Pennsylvania Constitution as an "excessive fine."

## II.    Analysis

The Forfeiture Act authorizes the forfeiture of a vehicle which "in any manner . . . facilitate[s] the transportation, sale, receipt, possession or concealment of" controlled substances under the Drug Act.  42 Pa. C.S. § 6801(a)(4).  The Forfeiture Act also permits the forfeiture of money that is:  (1) "furnished or intended to be furnished by any person in exchange for a controlled substance in violation of" the Drug Act; (2) "proceeds traceable to such an exchange"; or (3) "used or intended to be used to facilitate any violation of" the Drug Act.  42 Pa. C.S. § 6801(a)(6)(i)(A)-(B); *Commonwealth v. $34,440.00 U.S. Currency (Falette)*, 174 A.3d 1031, 1039 (Pa. 2017).  In a forfeiture proceeding involving either money or a vehicle, the Commonwealth bears the initial burden of establishing, by a preponderance of the evidence, that a substantial nexus exists between the property subject to forfeiture and a violation of the Drug Act.[10]  *Commonwealth v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 529 (Pa. 2005).  "A preponderance of the evidence is tantamount to a 'more likely than not' standard."  *Id.*  The Commonwealth need not establish one

---

[10] Our Supreme Court recently reaffirmed that the Commonwealth may establish its initial burden of proving a substantial nexus between seized currency and illegal drug activity by relying solely upon the rebuttable presumption in Section 6801(a)(6)(ii) of the Forfeiture Act.  *Falette*, 174 A.3d at 1046.  Section 6801(a)(6)(ii) provides that money "found in close proximity to controlled substances possessed in violation of" the Drug Act "shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of" the Drug Act.  42 Pa. C.S. § 6801(a)(6)(ii).  In this case, the Cash was not found in close proximity to any controlled substances, and therefore, the presumption does not apply.

of the above bases for forfeiture with "evidence directly linking the seized property to illegal activity, nor is a criminal prosecution or conviction required to establish the requisite nexus." *Falette*, 174 A.3d at 1039 (citing *Esquilin*, 880 A.2d at 529-30). Instead, the Commonwealth may satisfy its burden of establishing a party's involvement in illegal drug activity by circumstantial evidence. *Id*. at 1040. However, the Commonwealth must establish more than the possibility or a **mere suspicion** of a nexus. *Commonwealth v. Marshall*, 698 A.2d 576, 578-79 (Pa. 1997). Once the Commonwealth has met its initial burden of establishing a substantial nexus between the seized property and illegal drug activity, the burden of proof shifts to the claimant to prove that he or she is the owner of the property, acquired the property lawfully, and did not use or possess the property unlawfully. 42 Pa. C.S. § 6802(j).

We are aware that "the law generally disfavors forfeitures, requiring forfeiture statutes to be strictly construed," *Falette*, 174 A.3d at 1039 (citing *Commonwealth v. 1997 Chevrolet and Contents Seized from Young*, 160 A.3d 153, 193 (Pa. 2017)), and that forfeiture cases "are fact sensitive cases." *Commonwealth v. $9,000 U.S. Currency (Collins)*, 8 A.3d 379, 384 (Pa. Cmwlth. 2010).

### A.    Waiver

On appeal, Vasquez argues that the trial court erred in determining that the Commonwealth met its burden of establishing a substantial nexus between the seized Cash and Lexus and a violation of the Drug Act. In addition to challenging the Commonwealth's evidence as a whole, Vasquez contends that the ion scan evidence is insufficient, as a matter of law, to sustain the Commonwealth's burden. The Commonwealth responds that Vasquez waived her challenges to the ion scan

evidence because she failed to object to that evidence at trial and did not ask the court to rule on the pending motion *in limine* in that regard. We, therefore, initially address whether Vasquez waived her challenges to the ion scan evidence.

In its 1925(a) opinion, although it conceded that it did not rule on her motion *in limine*, the trial court determined that Vasquez waived her arguments with regard to the ion scan evidence because Vasquez did not object to that evidence at trial. (1925(a) Op. at 7-8.) While we agree with the trial court that, to the extent Vasquez sought to preclude Staff Sergeant Marsh's testimony through the motion *in limine*, any argument in that regard is waived. The parties agreed to qualify Staff Sergeant Marsh as an expert for a limited purpose, she proceeded to testify, and Vasquez made no other objection to preclude her testimony. (R.R. at 135a-36a.) However, Vasquez has preserved her argument that the ion scan evidence is not sufficient to sustain the Commonwealth's burden. Vasquez argues that the Commonwealth has not sustained its burden of establishing a substantial nexus between the seized property and a violation of the Drug Act with the testimony of Staff Sergeant Marsh. The record establishes that Vasquez challenged the sufficiency of the Commonwealth's evidence throughout these proceedings. Initially, Vasquez successfully limited Staff Sergeant Marsh's testimony to only her operation of the ion scanner device and the reading of the results. Then, at the close of the Commonwealth's evidence, Vasquez raised numerous legal challenges to the ion scan evidence in support of her motion for compulsory nonsuit, which the trial court denied. (*Id.* at 193a-97a.) Accordingly, we conclude that Vasquez preserved her legal challenges to the sufficiency of the ion scan evidence, which are now properly before this Court.

9

**B.  Substantial Nexus**

**1.  Ion Scan Evidence**

We next address whether the Commonwealth met its burden of demonstrating a substantial nexus with its ion scan evidence.  Vasquez argues that the ion scan results are meaningless because the Commonwealth did not compare those results to any casual contact levels from any relevant geographic area.  (Vasquez's Br. at 16 (quoting *Collins*, 8 A.3d at 387).)  She further asserts that the ion scan was not conducted in a way that prevents a small number of bills from affecting the overall results and that the ion scan should have been conducted in the same manner as it would have been performed in a bank.  The Commonwealth contends that the trial court properly accepted the ion scan evidence to establish the presence of controlled substances on the Cash and in the compartment.  The Commonwealth submits that ion scan evidence should be admissible, generally, to prove the presence of controlled substances other than cocaine on seized currency and other items, and, in such situations, casual contact levels should not be required because data does not exist for substances not typically found on currency in general circulation.  (Commonwealth's Br. at 36.)  The Commonwealth also maintains that the ion scans were properly conducted in accordance with established testing procedures.

In its 1925(a) opinion, the trial court justified its reliance on the ion scan evidence on the basis that Staff Sergeant Marsh's testimony was limited to her personal operation of the ion scanner and the results of the ion scan, which, the trial court stated, was all it considered.  (1925(a) Op. at 9.)  The trial court further explained its consideration of Staff Sergeant Marsh's testimony stating that it "made no mention [in its initial Opinion] of ion scan data from other states, and did not take into account whether the currency had ever been circulated in Pennsylvania, as no

10

comparison to the Pennsylvania 'casual contact level' was ever made at trial." (*Id.*) It also noted the Commonwealth's confirmation that Staff Sergeant Marsh had not been called to testify regarding casual contact levels. (*Id.*)

Staff Sergeant Marsh testified that trace amounts[11] of illicit substances are normally found on currency in general circulation, and those amounts vary by geographic region. (R.R. at 149a, 157a.) The average trace amount of a controlled substance found on cash in general circulation in a particular geographic region is known as the casual contact level. Because the casual contact level of an illicit substance may be found on currency in general circulation, the mere presence of this level on tested currency does not demonstrate a nexus to illegal activity. *Collins*, 8 A.3d at 387.

Furthermore, under our case law, in order for an ion scan to be relevant, and thus, admissible, the currency tested must be compared to the casual contact levels in the geographic region in which the currency was circulated. *Id.* at 388. In *Collins*, an ion scan revealed levels of cocaine on seized cash that were approximately three times higher than the casual contact level for cocaine on cash established in Pennsylvania. *Id.* at 382. However, the witness used the casual contact level for Pennsylvania, while the evidence showed that Collins was a West Virginia resident, the car was owned by his sister and was registered in New York, and he was driving from West Virginia to New York on an interstate highway when he was stopped by police. *Id.* at 388. The Court found there was no evidence that the seized money was ever circulated in Pennsylvania, thereby rendering the Pennsylvania casual contact level irrelevant. *Id.* Therefore, in *Collins*, the ion scan evidence was not sufficient to meet the Commonwealth's burden.

---

[11] Staff Sergeant Marsh testified that an ion scan device is set to detect the presence of controlled substances on currency in parts per billion. (R.R. at 164a-65a.)

In this case, Staff Sergeant Marsh testified on cross-examination that she used only the 2014 casual contact level for cocaine in Pennsylvania, (R.R. at 161a-65a), although she did not testify what those casual contact levels were.[12] However, the evidence established that Laporte and Ms. Lopez were New York residents, the Lexus was registered to another New York resident, Vasquez, and Laporte and Ms. Lopez were traveling from New York to Illinois on an interstate highway when they were pulled over. The Commonwealth did not present any evidence that the Cash was ever circulated in Pennsylvania, and Staff Sergeant Marsh testified that she could not speculate as to whether the Cash had ever been circulated in Pennsylvania. (R.R. at 161a.) Pursuant to *Collins*, ion scan evidence is irrelevant where the Commonwealth fails to compare the level of a controlled substance found on seized money with the casual contact level obtained from the **relevant geographic area** in question and prove that the money had ever been circulated in that region. *Collins*, 8 A.3d at 388. Thus, the casual contact level for Pennsylvania is irrelevant here.[13] Absent evidence of the casual contact levels from the relevant geographic areas, the ion scan test results are irrelevant and, thus, inadmissible.[14] Accordingly, we

---

[12] As Vasquez points out, Staff Sergeant Marsh testified only to the percentages and types of controlled substances found, and not the casual contact levels of the relevant geographic areas. (Vasquez's Br. at 17-18.) The trial court found Staff Sergeant Marsh's testimony in that regard unusual, stating to counsel for the Commonwealth, "you did something a little bit different this time than you normally do . . . you didn't have her testify to casual contact levels at all, correct?" (R.R. at 172a.) Counsel responded that the trial court was correct.

[13] As for the other drugs found on the Cash, Staff Sergeant Marsh also testified that there are no casual contact levels in Pennsylvania for those substances. (R.R. at 161a-62a, 164a, 170a.)

[14] We recognize that Staff Sergeant Marsh testified that, in her experience, she had never seen an ion scan alarm to the presence of these four substances on currency at the same time, as she did here. (R.R. at 145a.) While we are troubled by this testimony, its relevance suffers from the same infirmity as the other ion scan evidence. Without either casual contact evidence for the relevant geographic area, or evidence that, because the substance is not typically found on cash in

12

conclude that the trial court erred in relying upon the ion scan evidence under these circumstances.[15] *See Commonwealth v. $17,182.00 U.S. Currency (King)*, 42 A.3d 1217, 1220 (Pa. Cmwlth. 2012) (parties agreed that trial court correctly excluded ion scan evidence based on *Collins* because Commonwealth did not present any evidence that the seized money was ever circulated in Pennsylvania and evidence established that the relevant geographic area was New York); *see also Commonwealth v. $15,000 U.S. Currency (Williams)*, 31 A.3d 768, 775 n.6 (Pa. Cmwlth. 2011) (concluding that trial court correctly determined that ion scan evidence was irrelevant and inadmissible based on *Collins* because Commonwealth did not present any evidence that the seized money was ever circulated in Pennsylvania and evidence established that the relevant geographic areas were New York and New Jersey).

### 2.    Other Indicators of Illegal Activity

We next consider whether the remaining evidence upon which the trial court relied was sufficient to establish a nexus between the seized Cash and Lexus and illegal drug activity.  Specifically, the trial court relied on the following indicators of illegal activity identified in Corporal Cortes' testimony in finding a nexus:  (1) multiple air fresheners/overwhelming odor; (2) prayer cards, including that of a known "narco saint"; (3) Laporte's money and tattoos; (4) the Lexus's occupants' criminal histories; (5) their untruthful statements about their criminal histories; (6) the Lexus's registration to an absent third party; (7) the recent registration of the

---

general circulation in that geographic area, there is no data, this general statement is not sufficient to prove a substantial nexus between the Cash and a violation of the Drug Act.

[15] Due to our disposition on this issue, we need not consider Vasquez's other arguments regarding the ion scan evidence.

Lexus; (8) the Lexus's presence on a known drug route; (9) inconsistent stories about where the driver lived; (10) where Laporte and Ms. Lopez were going; (11) how they met up with each other in Brooklyn; (12) Laporte's repeated requests for Corporal Cortes to search the vehicle; (13) Ms. Lopez's demeanor when the troopers were close to discovering the compartment; (14) the discreet location of the Cash; (15) the intricacy of the compartment;[16] (16) the bundling of the Cash; (17) Laporte and Ms. Lopez's denial about having any knowledge of the Cash or compartment; (18) the existence of Luis Lopez's fingerprint on the duct tape; (19) Vasquez's admission that she had the compartment installed; (20) Vasquez's statement that no other person knew of the compartment; (21) Vasquez's statement that no one else had access to the compartment; (22) Vasquez's refusal to identify who built the compartment; and (23) the New York State DMV record showing that Luis Lopez owned the vehicle and Vasquez was only the registrant. (Trial Ct. Op. at 17-18.) Vasquez argues that this remaining evidence creates, at most, only a suspicion of illegal activity, not a nexus, based on established case law. The Commonwealth responds that it met its burden of proving a substantial nexus between the Cash and Lexus and unlawful drug activity by a preponderance of the evidence.

First, it is undisputed that no drugs or drug paraphernalia were found in the Lexus in which Laporte and Ms. Lopez were riding or on their persons, and no criminal charges have been filed in relation to the Cash or Lexus. Although not dispositive, such facts have been held to be probative of whether seized property was in fact contraband. *Commonwealth v. Fontanez*, 739 A.2d 152, 154 (Pa. 1999); *Marshall*, 698 A.2d at 579. Case law teaches us that when no drugs or drug paraphernalia are found and when no criminal charges are filed, establishing a nexus,

---

[16] We point out that Vasquez objected to Corporal Cortes' testimony regarding the intricacy of the compartment, which the trial court sustained. (R.R. at 69a-70a.)

14

even in the presence of other indicators, is difficult. In *Marshall* and *Fontanez*, similar cases to the instant matter, our Supreme Court reversed this Court which had upheld the forfeiture of large sums of money where no drugs or drug paraphernalia were found on or near the claimants and no criminal charges were filed. In *Marshall*, police seized $3,400 found in the back seat between seat cushions during a traffic stop for speeding. No drugs or drug paraphernalia were found in the vehicle or on the occupants, and no criminal charges were filed. The trial court found a nexus based on the appellant's and driver's inconsistent stories regarding ownership of the money, the money being bundled in a manner consistent with drug dealing, the cash being found between the seat cushions, the drug dog alerting on the money, and a finding that appellant's testimony was not credible. *Marshall*, 698 A.2d at 578-79. This Court affirmed, and our Supreme Court reversed, holding that this evidence showed nothing more than a "suspicion of a possible nexus" between the money and illegal drug activity. *Id.* at 579. The Court explained that the bundling of the money "is equally consistent with an innocent person's attempt to simplify and promote precision in the counting of lawfully obtained funds." *Id.* With regard to the drug dog alert, the Court noted that "[a] completely innocent citizen . . . could have in his or her possession, at any time, currency that happened to be involved in a drug transaction at some unknown time in the past." *Id.* Even considered along with the other factors relied upon by the trial court, the Supreme Court stated that residual presence of drugs on the money was not enough to prove the required nexus. *Id.*

The Supreme Court also reversed this Court in *Fontanez*. In that case, the police stopped the appellant for a traffic violation and observed a paper bag on the floor of the vehicle that contained $2,650. A drug dog alerted at the car, but no drugs or drug paraphernalia were found, and no criminal charges were ever filed in relation

15

to the money. The trial court granted the Commonwealth's motion for forfeiture, relying on the late hour of the stop, the location of the stop in an area known for drug activity, the large amount of money, the officer's knowledge of appellant's family, and appellant's refusal to explain where he got the money. *Fontanez*, 739 A.2d at 154. This Court affirmed, and the Supreme Court reversed, concluding that those factors, taken individually or in combination, were insufficient to sustain the Commonwealth's burden of proving a nexus between the money and illegal drug activity. *Id.* at 154-55. The Court further observed that "a person stopped for a traffic violation has no obligation to respond to questions asked by an officer apart from statutory obligations to produce a driver's license, registration, and proof of insurance" and that the "failure to give an explanation where none is required cannot be construed as evidence of wrongful conduct." *Id.* at 155.

In a subsequent discussion of *Marshall* and *Fontanez*, our Supreme Court recognized that both of those cases suffered from a "drug nexus deficiency that controlled the outcome" because no drugs or drug paraphernalia were found. *See Esquilin*, 880 A.2d at 534.

More recently, in *Collins*, this Court reached a similar result. In that case, an officer stopped the appellant on an interstate highway, and after the appellant consented to a search of the vehicle, the officer found $9,000 in the glove box and driver's side door. No drugs or drug paraphernalia were found, and no criminal charges were filed against the appellant. The trial court found a nexus between the money and illegal drug activity based on the bundling of the money, the drug dog's alert to the glove box, and the ion scan results. This Court distinguished the case from *Marshall* and *Fontanez* on the basis that those cases did not involve ion scan results. However, we determined that the ion scan evidence was inadmissible and

16

that the remaining evidence was insufficient to establish the required nexus. *Collins*, 8 A.3d at 388. The Court also noted that it is not illegal to carry cash and rejected the notion that "the presence of a large sum of cash coupled with alleged inconsistencies or lack of information in a person's 'story' are enough to meet [the Commonwealth's] burden of proof." *Id.*

One year later in *Williams*, 31 A.3d at 775, police executed a traffic stop of a vehicle rented by an absent third party on Interstate 80 for speeding. Police searched the rental vehicle and found $15,000 underneath the back seat. No drugs or drug paraphernalia were found. Like in *Collins*, the Commonwealth presented ion scan evidence; however, based on the holding in *Collins*, the trial court excluded those results. Consequently, the Commonwealth was forced to rely on the driver's and passenger's criminal histories, the driver's previous involvement in a similar seizure, the discrete placement of the money in the vehicle, how it was bundled, the driver's and passenger's convoluted stories about their trip and the vehicle, the overwhelming smell of marijuana found on the money, the drug dog's alert, and the driver's and passenger's inconsistent stories about where the money came from. *Id.* at 774. The trial court determined that the Commonwealth established its burden of proving a substantial nexus based on the totality of the circumstances. This Court reversed, concluding that, like in *Marshall* and *Collins*, the evidence was insufficient to establish the required nexus. *Id.* at 775-76.

Most recently in *King*, 42 A.3d at 1218, police conducted a routine traffic stop on Interstate 80, and a search of the vehicle revealed $17,182 in the center console of the vehicle. No drugs or drug paraphernalia were found, and no criminal charges were filed. The trial court concluded that the Commonwealth established a nexus, based on the totality of the circumstances, namely the driver's use of a single key,

17

the vehicle being registered to someone other than the driver, the driver's drug-related criminal history, the vehicle traveling on a known drug route, a drug dog's alert, and the bundling of the money. *Id.* at 1219. This Court reversed based on *Marshall* and *Fontanez*, concluding that the evidence was "equally consistent with innocent behavior." *Id.* at 1222.

In the instant matter, the Commonwealth's remaining evidence is similar to the evidence found to be insufficient to establish a nexus in *Fontanez*, *Marshall*, *King*, *Williams*, and *Collins*. Here, Laporte and Ms. Lopez were pulled over for tailgating, a minor traffic violation, on Interstate 80. No drugs or drug paraphernalia were found in the Lexus or on the occupants, and no criminal charges have been filed in relation to the seized Cash, which are facts that are probative of whether seized money is contraband subject to forfeiture. *Fontanez*, 739 A.2d at 154-55; *Marshall*, 698 A.2d at 578-79. This case, thus, suffers from the "drug nexus deficiency" recognized by our Supreme Court in *Esquilin*, 880 A.2d at 534.

Regarding Laporte and Ms. Lopez's inconsistent stories about their trip, and as our Supreme Court has explained, they were under no obligation to respond to Corporal Cortes' questions and their failure to provide an explanation where none was required is not indicative of illegal drug activity. *Fontanez*, 739 A.2d at 155. While both Laporte and Ms. Lopez have criminal histories, we held in *Williams* that "prior criminal history is not dispositive on the issue of whether money seized is related to illegal drug activity." *Williams*, 31 A.3d at 775 (citing *Collins*, 8 A.3d at 388). Further, their criminal histories are of questionable weight here where it is Vasquez claiming ownership of the seized property, not Laporte or Ms. Lopez. Moreover, the bundling of the Cash, the vehicle's registration to an absent third party, the large amount of money, the discrete location of the Cash, and the vehicle's

18

traveling on a known drug route have all been held insufficient to establish the required nexus based on the above established precedent. *See generally Fontanez, Marshall*, *King*, *Williams*, and *Collins*. We also do not believe that the recent registration of the Lexus, the $900 in Laporte's pocket, Ms. Lopez's change in demeanor as state troopers vigorously searched the Lexus, the existence of Luis Lopez's partial fingerprint on one of the duct-taped packages, or Vasquez's statements in her deposition about having the compartment installed are dispositive, as these observations are "equally consistent with innocent behavior." *King*, 42 A.3d at 1222; *see Marshall*, 698 A.2d at 579. Finally, the Commonwealth has not pointed to any authority, and we can find none, suggesting that the presence of multiple air fresheners and their overwhelming odor,[17] the existence of religious prayer cards in a vehicle, or a person's tattoos are indicative of illegal drug activity. Thus, this remaining evidence is inadequate to meet the Commonwealth's burden of proof.

Because the Commonwealth has not met its burden of proof, our analysis ends, and we need not consider whether Vasquez has shown she is an owner, innocent or otherwise, who is entitled to return of the property, as the dissent contends.

Section 6802(j) of the Forfeiture Act provides:

**(j) Owner's burden of proof.--**At the time of the hearing, **if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture** under section 6801(a) or 6801.1(a), the burden shall be upon the claimant to show:

---

[17] In fact, this Court has held that even the strong odor of **marijuana** in a bag containing a large amount of money creates only a **suspicion** of a nexus between cash and illegal drug activity and that "it is equally possible that the money seized was lawfully obtained." *Williams*, 31 A.3d at 776.

19

(1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.

(2) That the claimant lawfully acquired the property.

(3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

42 Pa. C.S. § 6802(j) (emphasis added).

Under the plain terms of the Forfeiture Act, the burden does not shift to a claimant to show lawful ownership unless the Commonwealth first satisfies its burden, which it did not do here.

The dissent argues that the question is not whether Vasquez is an "innocent" or lawful owner, but whether she is the owner at all. There is no threshold requirement that a claimant demonstrate ownership. To hold that there is such a requirement would render portions of the Forfeiture Act a nullity because the Commonwealth could seize property and keep it whether it is a product of illegal conduct or not.

Section 6801(b) of the Forfeiture Act states, in relevant part: "**Property subject to forfeiture under this chapter may be seized** by the law enforcement authority upon process issued by any court of common pleas having jurisdiction over the property." 42 Pa. C.S. § 6801(b) (emphasis added). In exceptional circumstances, seizure "without process" is authorized. 42 Pa. C.S. § 6801(b)(1)-(4). However, a lawful seizure is dependent upon the property being "subject to forfeiture under this chapter." Once the property is determined not "subject to forfeiture" the seizure ends.

20

Our appellate jurisprudence confirms that when a forfeiture petition is denied, the seized property must be returned. Even in a case where it was alleged that the registered owner of the seized property was a "sham owner," "the trial court was required to return the vehicle to the registered owner . . . . Irrespective of who the real owner was, without evidence that the vehicle was subject to forfeiture, the vehicle could not be awarded to the Commonwealth." *Commonwealth v. One 1985 Dark Blue Mercedes Benz Car*, 571 A.2d 482, 485 (Pa. Super. 1990).

With respect to cash, it has long been understood that the "fungible nature of currency necessarily raises an inference that the possessor is the lawful owner . . . ." *Commonwealth v. Younge*, 667 A.2d 739, 743 (Pa. Super. 1995). There are two possibilities:

> [E]ither appellant is a bailee, or he is, as inferred by the Commonwealth and the trial court, an "**un** lawful" possessor, having come to possess the cash by some undetermined illegal means. However, if appellant were a bailee, he would have to answer to his bailor, not the Commonwealth, for care of the currency. If appellant was in fact an unlawful possessor, then the cash constitutes derivative contraband, and would be subject to forfeiture as such. Rule 324(b).[18] It would appear that the Commonwealth, by avoiding a forfeiture proceeding in which it concedes it could not prevail, hopes to accomplish indirectly what it could not accomplish directly: it seeks to avoid returning the cash without producing **any** evidence that the money does not belong to appellant, and without producing **any** evidence that the cash is derivative contraband and subject to forfeiture.

*Id.* at 746-47 (emphasis in original).

In short, the burden of "proving lawful ownership of the property" never shifts to the claimant where "the Commonwealth has failed to meet its burden of

---

[18] Pennsylvania Rule of Criminal Procedure 324 was renumbered to Rule 588 effective April 1, 2001. *See* Pa.R.Crim.P. 588, Note.

establishing a nexus between the seized [cash] and illegal drug activity[.]" *Williams*, 31 A.3d at 776.

Here, the Commonwealth has failed to prove that the vehicle or the currency was used or was intended to be used in violation of the Drug Act. The Commonwealth cannot continue to hold this property. If the claimant is a bailee, then she "[will] have to answer to [her] bailor, not the Commonwealth, for care of the currency.[19] *Younge*, 667 A.2d at 747. The burden on a claimant to prove ownership arises only after the forfeiture is granted.[20]

---

[19] The dissent contends the bailor/bailee analogy is incomplete because the bailor is not identified. The analogy is a hypothetical and assumes there is a third person who is the owner of the property, i.e. bailor. Whether there is, however, is immaterial to our analysis here because the Commonwealth failed to meet its burden and show a substantial nexus between the vehicle and cash and a violation of the Drug Act.

[20] The dissent stresses that the trial court found that Vasquez was only a registrant and not the owner and that she should be compelled to establish that she has a "legally-enforceable ownership or possessory interest in the seized property" before the vehicle and cash are released to her. (Dissenting Op. at 5.) Again, because the Commonwealth did not meet its burden, the owner/registrant distinction is without difference to our analysis. However, under either New York or Pennsylvania law, Vasquez has, at a minimum, a possessory interest in the vehicle because she is its registrant. New York's Vehicle and Traffic Law defines a vehicle "owner" as:

> [a] person, other than a lien holder, having the property in or title to a vehicle . . . . **The term includes a person entitled to the use and possession of a vehicle** . . . subject to a security interest in another person and also **includes any lessee or bailee** of a motor vehicle . . . having the exclusive use thereof, under a lease or otherwise, for a period greater than thirty days.

N.Y. Veh. & Traf. Law § 128 (McKinney 2018) (emphasis added). Likewise, the Pennsylvania Vehicle Code defines a vehicle "owner" as:

> [a] person, other than a lienholder, having a property right in or title to a vehicle. **The term includes a person entitled to the use and possession of a vehicle** subject to a security interest in another person, but excludes a lessee under a lease not intended as security.

75 Pa. C.S. §102 (emphasis added).

## III. Conclusion

We agree that finding such a large amount of cash in a vehicle traveling on a known drug route, under these circumstances, is highly suspicious. However, while we are suspicious that there may have been a violation of the Drug Act, under our precedent, *Fontanez*, *Marshall*, *King*, *Williams*, and *Collins*, these circumstances do not demonstrate a substantial nexus between the Cash and Lexus and a violation of the Drug Act. Here, where no drugs or drug paraphernalia were found and no criminal charges were filed, and where the type of evidence presented by the Commonwealth has been held insufficient to form a substantial nexus under established precedent, we must similarly conclude that the Commonwealth has not established anything more than the **suspicion** of a possible nexus between the Cash and Lexus and a violation of the Drug Act. This, simply, is insufficient to support a forfeiture of the Cash and Lexus under the law.[21]

---

The New York Court of Appeals has explained that, "due process requires that an innocent co-owner be given the opportunity to demonstrate that his or her present possessory interest in a seized vehicle outweighs the City's interest in continuing impoundment." *Prop. Clerk of Police Dep't of City of New York v. Harris*, 878 N.E. 2d 1004, 1005 (N.Y. 2007). An individual can accomplish this by demonstrating, in relevant part, that he or she "is a **registered** and/or titled **co-owner**." *Id.* at 1012 (emphasis added). Therefore, "ownership" is not so narrowly defined.

In addition, Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. §§ 1701-1799.7, "require[s] each motor vehicle **registrant** [to] certify that the **registrant** is financially responsible at the time of registration or renewal thereof." 75 Pa. C.S. § 1786(b) (emphasis added). If the Commonwealth requires a registrant to maintain insurance, the registrant must have some enforceable interest in the vehicle.

Finally, it is noteworthy this is not a case where Vasquez sought to intervene on her own behalf. Rather, the Commonwealth brought her into the action by having her served with a Rule to Show Cause. Therefore, the Commonwealth considered Vasquez's interest in the cash and/or vehicle sufficient to require that she be given notice as an owner under the statute.

[21] Because we conclude that the Commonwealth failed to meet its burden of proving a substantial nexus between the seized property and illegal drug activity, we need not address Vasquez's remaining arguments.

Accordingly, we reverse the order of the trial court.

                                             _____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 1229 C.D. 2016 |
| | : | |
| $301,360.00 U.S. Currency and | : | |
| One 2011 Lexus, RX350, | : | |
| VIN #2T2BK1BA48C081250 | : | |
| | : | |
| Appeal of: Clarissa Vasquez | : | |

# **O R D E R**

**NOW**, April 4, 2018, the May 19, 2016 Order of the Court of Common Pleas of Monroe County, entered in the above-captioned matter, is hereby **REVERSED**.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania     :
                                 :
              v.                 :     No. 1229 C.D. 2016
                                 :     Argued:  September 13, 2017
$301,360.00 U.S. Currency and    :
One 2011 Lexus, RX350,           :
VIN #2T2BK1BA48C081250           :
                                 :
Appeal of: Clarissa Vasquez      :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge[1]
          HONORABLE MICHAEL H. WOJCIK, Judge


**DISSENTING OPINION**
**BY JUDGE BROBSON**                    **FILED:  April 4, 2018**


The majority's opinion is faithful to precedent on the burden faced by the Commonwealth when seeking forfeiture under the Controlled Substances Forfeiture Act (Forfeiture Act).[2]  Under that precedent, and despite what common sense might otherwise suggest, I am compelled to agree that the Commonwealth failed to establish, as a matter of law, a "substantial nexus" between illegal drug activity and the 2011 Lexus RX350 (Vehicle) and the $301,360 in vacuum-sealed

---

[1] This case was argued before an *en banc* panel of the Court that included former Judge Joseph M. Cosgrove.  Because Judge Cosgrove's service on the Court ended January 1, 2018, this matter has been submitted on briefs to Judge Covey as a member of the panel.

[2] 42 Pa. C.S. §§ 6801-6802, repealed and replaced by the Act of June 29, 2017, P.L. 247, effective July 1, 2017.

and separately duct-taped packages discovered in a sophisticated, after-market hidden compartment in the trunk area of the Vehicle (Cash). I write separately, however, because the factual findings of the Court of Common Pleas of Monroe County (Common Pleas), the evidence produced at trial, and the procedural history of this case raise lingering issues regarding disposition of the Vehicle and the Cash that Common Pleas should address on remand.

The record in this case shows, as the majority notes, that Appellant Clarissa Vasquez (Vasquez) is *not* the owner of the Vehicle. That status was reserved to Luis Lopez (Mr. Lopez). Mr. Lopez, however, did not appear to contest the forfeiture of the Vehicle and the Cash. The record also shows that Vasquez was *not* in possession of either the Vehicle or the Cash at the time of the seizure. Enrique A. Laporte (Laporte) and Zaida Lopez (Ms. Lopez) were in possession. Like Mr. Lopez, neither Laporte nor Ms. Lopez appeared to contest the forfeiture of the Vehicle and the Cash. In terms of ownership of the Cash, the only evidence tying the Cash to any individual is a single fingerprint of Mr. Lopez found on the duct tape that bound the Cash. (Trial Ct. Op. at 9; Trial Tr. at 151-65.) In the absence of any claim to the Vehicle and/or Cash by these three individuals, Common Pleas, at the request of the Commonwealth, entered an order, which provided, *inter alia:*

> All claims of right, title and interest of Enrique Laporte, Zaida Lopez and Luis Lopez in the above-captioned defendant/property is hereby declared to be terminated, revoked and rendered null and void. The defendant/property [Vehicle and Cash] as it relates to Enrique Laporte, Zaida Lopez, and Luis Lopez is hereby declared to be forfeited to the Office of Attorney General . . . .

(March 30, 2016 Order, C.R., No. 49.)

Turning to Vasquez, the Commonwealth alleged in its Amended Petition for Forfeiture and Condemnation (Forfeiture Petition) that the Vehicle was registered to Vasquez, but that the owner of the Vehicle was unknown. (Reproduced Record (R.R.) at 2a.) Apparently, the State of New York allows the title owner of a vehicle to confer on another driver(s) the status of registrant. (https://dmv.ny.gov/registration/register-and-title-vehicle ("Registrations don't need to be in the owner's name, or for only one person.") (last accessed Jan. 29, 2018). Vasquez alleged in her answer to the Commonwealth's Forfeiture Petition, under the heading of "new matter," *inter alia*, that she "is the lawful owner of the subject property." (R.R. at 10a, ¶ 9.) The Commonwealth, however, denied this averment. (C.R., No. 30 at 1, ¶ 9.) During trial, Common Pleas admitted into evidence Plaintiff's Ex. 11, a record of the New York Department of Motor Vehicles, confirming that Mr. Lopez, *and not Vasquez*, was the owner of the Vehicle.

Common Pleas issued an Opinion and Order on May 19, 2016 (Opinion), granting the Forfeiture Petition. In its Opinion, Common Pleas stated the following with respect to Vasquez's claim of ownership in the Cash:

> At trial, [Vasquez] rested without presenting any evidence or testimony, a fact confirmed when asked by the Court whether they [sic] were presenting no evidence. We are left to rely on her unsubstantiated claim in her Answer with New Matter that she is the lawful owner of the currency, obtained it lawfully, and that the currency was not unlawfully used or possessed. Without any evidence or testimony to that effect, we cannot find [Vasquez] has met her burden to rebut the presumption of forfeiture.

(Opinion at 21.) With respect to the Vehicle, Common Pleas found that the Vehicle is owned by Mr. Lopez, but registered to Vasquez. (Opinion at 9.) The order terminating Mr. Lopez's ownership interest in the Vehicle raises a legal question under New York law as to whether Vasquez's interest as a registrant, conferred by

PKB-3

Mr. Lopez as the Vehicle's owner, remained legally enforceable at the time of trial in this matter.[3]

The undisputed record evidence and the factual findings by Common Pleas raise a substantial question in my mind over whether Vasquez had the requisite interest in the Vehicle and the Cash to contest the Commonwealth's Forfeiture Petition. *See, e.g.*, *Commonwealth v. Wingait Farms*, 659 A.2d 584 (Pa. Cmwlth. 1995) (affirming dismissal of wife's challenge to forfeiture of husband's property for lack of standing), *aff'd*, 690 A.2d 222 (Pa.), *cert. denied*, 522 U.S. 831 (1997). Although the Commonwealth raised Vasquez's standing in its Pre-Trial Memorandum (C.R., No. 41), it did not pursue a pretrial ruling on this question. Instead, it proceeded to present its case on the question of nexus. Nonetheless, even if Vasquez asserted a colorable claim of ownership in the seized property pretrial,

---

[3] In footnote 20, the majority contends that because the Commonwealth provided notice to Vasquez of the forfeiture, "the Commonwealth considered Vasquez's interest in the cash and/or vehicle sufficient to require that she be given notice as an owner under the statute." The majority's statement ignores the actual allegations in the Forfeiture Petition. There, the Commonwealth clearly alleges that the "owner(s)" of the Cash and the Vehicle is "unknown." (R.R. at 2a.) Yes, the Commonwealth provided Vasquez notice of the Forfeiture Petition, but it did not do so because it was conceding that she was the "owner." Rather, in the Forfeiture Petition, Vasquez is identified only as "registrant" of the Vehicle. The Commonwealth does not allege in the Forfeiture Petition that Vasquez had any interest in the Cash.

As the majority notes, the Commonwealth filed the Forfeiture Petition in December 2015. At that time, Mr. Lopez, who conferred upon Vasquez "registrant" status with respect to the Vehicle, still owned the Vehicle. Accordingly, at that time, Vasquez had an interest in the Vehicle under New York law. It was only later, when Common Pleas issued its unappealed March 30, 2016 Order, that Mr. Lopez's ownership interest in the Vehicle was extinguished. The question that the majority does not answer is what effect the order extinguishing Mr. Lopez's ownership interest in the Vehicle had on Vasquez's registrant status under New York law. Instead, the majority simply claims that "this distinction is without difference to our analysis." (Maj. Op. at 23 n.20.) Clearly, "registrant" and "owner" are different under New York law. The majority assumes that they are the same, which I respectfully suggest is error.

such that she could force the Commonwealth to establish its burden, the evidence adduced during trial and Common Pleas' factual findings leave doubt as to whether she is the proper party to whom the Cash and Vehicle should be returned.

While it may be true that under the Forfeiture Act, a mere claim of a right of possession (unless standing is challenged pretrial) is sufficient to trigger a hearing on a forfeiture petition, 42 Pa. C.S. § 6802(i), that does not also mean that the mere allegation in the filed claim is sufficient to establish conclusively that right of possession, such that the Commonwealth must release the seized property to any such claimant should it fail to satisfy the substantial nexus inquiry.[4] Where, as here, after the Commonwealth fails to satisfy its burden on the forfeiture petition, the claimant's ownership or right of possession in the seized property remains in doubt, the claimant should be compelled to establish to the court's satisfaction that which she alleged—*i.e.*, a legally-enforceable ownership or possessory interest in the seized property—before the court-ordered release of that property to the claimant.

The majority rejects this approach, mischaracterizing my position and relying on precedent that is inapposite. Contrary to the majority's characterization, I am not requiring Vasquez to prove that she is an "innocent" owner. A claimant need not prove that she is an "innocent" owner unless the Commonwealth firsts

---

[4] "Upon the filing of a claim for the property setting forth a right of possession, the case shall be deemed at issue and a time shall be fixed for the hearing." 42 Pa. C.S. § 6802(i). The majority, in response to this dissent, claims that "[t]here is no threshold requirement that a claimant demonstrate ownership." (Maj. Op. at 21.) While this is true by the strictest of interpretations, I will assume that the majority does not interpret this language as allowing someone to file a specious ownership claim, simply taking the gamble that the Commonwealth might fail to prove the requisite nexus to shift the burden in the forfeiture proceeding. Here, Vasquez alleged in her answer to the Forfeiture Petition that she was the "lawful owner" of the Vehicle. This proved false at trial, as found by Common Pleas. If the allegation of ownership ultimately proves false, there appears to me to be no legal, let alone rational, basis to return unlawfully-seized property to a person who files a false claim.

meets its burden of proof. *Commonwealth v. $15,000 U.S. Currency (Williams)*, 31 A.3d 768, 776 (Pa. Cmwlth. 2011). In *Williams*, the seized cash was found in a rental car rented in the name of the claimant, although the claimant was not in the vehicle when police seized the cash. The claimant, however, appeared to contest the forfeiture. There was *no* question in *Williams* as to whether claimant was, indeed, the "owner" of the cash. Indeed, unlike Vasquez here, the claimant in *Williams* actually testified during the forfeiture proceeding about the source of the cash and her claim to it. The Commonwealth never contested her ownership claim; rather, it questioned only whether she established that she was an "innocent" owner. Ultimately, however, this Court ruled that because the Commonwealth failed to prove nexus, the claimant in *Williams* did not have to prove that she was, in fact, "innocent." As her ownership was not in doubt, the cash had to be returned to her (and not someone else).

The facts here, however, are materially different. As noted above, Vasquez alleged in her answer to the Commonwealth's Forfeiture Petition that she was the lawful owner of the Vehicle and the Cash. As for the Vehicle, Common Pleas, based on substantial evidence of record, found that she was *not* the owner of the Vehicle. As for the Cash, unlike the claimant in *Williams*, Vasquez presented no evidence at the hearing to corroborate her bald assertion of ownership. Indeed, as noted above, Common Pleas expressly rejected the "unsubstantiated claim" of ownership of the Cash in Vasquez's answer, particularly in light of the fact that the

only evidence tying the Cash to any individual was a single fingerprint of not Vasquez, but of *Mr. Lopez*.[5]

In light of Common Pleas' factual findings, the question is not whether Vasquez is "innocent," it is whether she is an owner of the Vehicle, the Cash, or both. While I agree with the majority that the seizure here has ended due to a lack of nexus, the majority cites to no court opinion or statute that compels the Commonwealth to return improperly seized property to anyone other than the possessor from whom it was seized, the property's owner, or some other person who has a *right* of possession.[6] While in most forfeiture cases the claimant's entitlement to return of the seized property is never at issue, the facts in this case are unique: (1) the interests of the possessors of the Vehicle and the Cash at the time of seizure as well as the Vehicle's owner have been extinguished by an unappealed order of court; (2) Vasquez's allegation of ownership in the Vehicle set forth in her answer to the Forfeiture Petition proved false; and (3) Vasquez presented no evidence to support her allegation of ownership in the Cash. The status of Vasquez's interest as a mere named "registrant" of the Vehicle, but not the Vehicle's owner, under New

---

[5] The majority's claim that Vasquez was a "bailee" accountable to her "bailor" has no record support. A "bailee" is "one to whom goods are entrusted by a bailor." Black's Law Dictionary 141 (6th ed. 1990). There is no dispute that Vasquez was not in possession of either the Cash or the Vehicle at the time of seizure. To the extent, then, there was a bailment in this case, the bailees were Laporte and Ms. Lopez, not Vasquez. A more appropriate question given the facts of this case is who was the bail*or*? The majority does not answer this question, rendering its bailment analogy, at best, incomplete.

[6] At page 21, the majority suggests that my approach allows the Commonwealth to keep seized property "whether it is a product of illegal conduct or not." To be clear, that is not my position. At this point, the seizure has ended and the forfeiture has failed. What is now at issue is what to do with the Vehicle and the Cash. The Commonwealth's retention of the property under the Forfeiture Act is not an option.

York law is unclear, particularly in light of the court order extinguishing Mr. Lopez's ownership interest.

For these reasons, in addition to reversing the May 19, 2016 Order, I would remand this matter to Common Pleas for further proceedings and a decision on the appropriate disposition of the Cash and the Vehicle. Vasquez may have been successful in her challenge of the forfeiture, but she has not yet established that she is entitled to the Cash and the Vehicle.

_____
P. KEVIN BROBSON, Judge

Judge Covey joins in this dissenting opinion.