IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania   :
                               :
         v.                    :  No. 299 C.D. 2017
                               :  SUBMITTED:  June 8, 2018
$182.00 Cash, et. seq.         :
                               :
Appeal of: Matthew Wisotzkey   :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                         FILED:  September 12, 2018

Matthew Wisotzkey appeals, *pro se*, from the February 3, 2017 Order of the Court of Common Pleas of York County (Trial Court), which granted in part the Commonwealth of Pennsylvania's (Commonwealth) Petition for Forfeiture and granted in part Wisotzkey's Motion for Return of Property.  Because we conclude that the Commonwealth failed to prove a substantial nexus between certain forfeited items and unlawful drug activity, we affirm in part and reverse in part.

## **Background**

On October 14, 2014, Officer Adam Bruckhart and other members of the York County Drug Task Force executed search warrants at two properties in York, Pennsylvania:  a residential property located at 420 West Princess Street and a nearby garage located at 223 South Mill Lane.  Trial Ct. Op., 11/22/17, at 2.

When the officers executed the search warrant at 420 West Princess Street, Wisotzkey was inside the residence and holding an assault rifle, which the officers

seized. Notes of Testimony (N.T.), 2/3/17, at 13, 21. During their search of the residence, the officers discovered a small amount of marijuana, $182 in cash, a handgun, a revolver, various hand tools, jewelry, collectible coins, two stun guns, a cell phone, and an Igloo cooler containing stamps and music records. Trial Ct. Op., 11/22/17, at 3; N.T., 2/3/17, Cmwlth. Ex. 2. In the third-floor attic, the officers discovered a defunct marijuana-growing operation and seized various marijuana-growing equipment. N.T., 2/3/17, at 7, 21-22. The officers also found and seized property deeds, including a deed to 420 West Princess Street, and a lease agreement for 223 South Mill Lane. Trial Ct. Op., 11/22/17, at 3. Wisotzkey was in possession of keys to the 223 South Mill Lane garage. *Id.*

During their search of 223 South Mill Lane, the officers discovered an active marijuana-growing operation. N.T., 2/3/17, at 7. They seized 324 live marijuana plants (with an estimated value of $150,000) and various marijuana-growing equipment, including fans, ladders, ventilation systems, artificial lighting, and dehumidifiers. *Id.* at 8, 12. The officers also seized a floor jack, a security camera, storage containers, a box of fireworks, and a weed whacker. *Id.*; N.T., 2/3/17, Cmwlth. Ex. 1.

A criminal record check revealed that Wisotzkey was a convicted felon not authorized to possess a firearm. Trial Ct. Op., 11/22/17, at 4. Police arrested Wisotzkey and charged him with persons not to possess firearms, manufacture of marijuana, and possession of marijuana with intent to deliver. *Id.* at 2; N.T., 2/3/17, at 5.

On December 11, 2014, the Commonwealth filed a Petition for Forfeiture of the seized items pursuant to former Sections 6801 and 6802 of the Judicial Code, which were commonly known as the Controlled Substances Forfeiture Act (Forfeiture Act),

42 Pa. C.S. §§ 6801-6802. Original Record (O.R.), Item No. 2.[1] On December 18, 2014, the Trial Court issued a Rule to Show Cause why the Petition for Forfeiture should not be granted. *Id.* There is no record evidence showing that either the Petition for Forfeiture or the Rule to Show Cause was served on Wisotzkey at that time.[2] Wisotzkey did not respond to either filing.

On April 23, 2016, Wisotzkey filed a Motion for Return of Property in his underlying criminal case.[3] Trial Ct. Op., 11/22/17, at 4; Cmwlth.'s Br. at 6. On April 25, 2016, the Trial Court held a pre-trial hearing in the criminal case. Cmwlth.'s Br. at 6. After that hearing, the Commonwealth served a copy of its Petition for Forfeiture on Wisotzkey. Am. 1925(b) Stmt., ¶ I(C)(2)(b).

On July 21, 2016, a jury convicted Wisotzkey of the above-referenced criminal charges. Trial Ct. Op., 11/22/17, at 4. On September 27, 2016, the Trial Court sentenced Wisotzkey to an aggregate term of 7½ to 15 years in prison. *Id.*

On September 30, 2016, the Commonwealth filed a Motion to Set Forfeiture Hearing Date in the instant matter, and the Trial Court scheduled a hearing for December 20, 2016. Wisotzkey appeared at the December 20, 2016 hearing without

---

[1] After the conclusion of the forfeiture proceedings in the Trial Court, the General Assembly repealed this version of the Forfeiture Act by the Act of June 29, 2017, P.L. 247, effective July 1, 2017. The Forfeiture Act is now codified at Sections 5801-5808 of the Judicial Code, 42 Pa. C.S. §§ 5801-5808. However, the former Forfeiture Act, cited above, was in effect at all times relevant to this appeal.

[2] The Proof of Service appended to the Commonwealth's Petition for Forfeiture states that service was made, by certified mail, on Desiree R. McClain, 2044 Swatara Street, Harrisburg, Pennsylvania. O.R., Item No. 2. There is no indication in the record who Desiree McClain is or why the Petition for Forfeiture was sent to McClain and not to Wisotzkey. The Trial Court docket entries show that the Rule to Show Cause was mailed to Wisotzkey but was returned as "undeliverable." *Id.*, Item No. 1.

[3] Wisotzkey's Motion for Return of Property is not included in the certified record in this appeal.

counsel.  After questioning by the Trial Court, Wisotzkey indicated that he wished to have the assistance of counsel in the forfeiture matter.  The following exchange occurred on the record:

> THE COURT:  So, Mr. Wisotzkey, is it your intention to proceed, representing yourself on the forfeiture?
>
> [WISOTZKEY]:  If I have to proceed without stand[-]by counsel, yes, I guess so.
>
> THE COURT:  What are you asking for, because you haven't asked for anything regarding counsel in this proceeding, sir?
>
> [WISOTZKEY]:  Well, I haven't been – I tried to communicate with [Jonelle] Eshbach [(Wisotzkey's appellate counsel in the criminal case)] about this proceeding, and I haven't received an answer yet, so I'm kind of – don't know exactly where I stand.
>
> THE COURT:  You're kind of what?
>
> [WISOTZKEY]:  I don't know exactly where I stand as far as counsel.
>
> THE COURT: Well, Attorney [Jared M.] Mellott [(Commonwealth's counsel)], based on what you just said, he's not entitled to court-appointed counsel.  At the same time, he cannot afford counsel.  That's pretty obvious to me.  So what are you asking?  Do you want him to have counsel or you don't want him to have counsel?
>
> ATTORNEY MELLOTT:  Doesn't matter to me.  I just noticed in our new forfeiture petitions, the newer template, we are very clear about letting claimants know their right to counsel.  But this, I noticed, is the older version . . . .
>
> **So I want to make it clear he does have the right to counsel.  Just because he may be indigent, though, does not mean he would be entitled to court-appointed counsel.  He would be able to seek the services of MidPenn Legal Services or another referral from the York County Bar Association.**

THE COURT: **Is that what you wish to do, sir?**

[WISOTZKEY]: **I believe so, Your Honor. I'm looking at losing about $30,000.00 worth of inventory that [the Commonwealth] seized from my properties.**

N.T., 12/20/16, at 3-5 (emphasis added).[4]

The Trial Court then rescheduled the forfeiture hearing for February 3, 2017, to allow Wisotzkey to obtain counsel, noting that "if [Wisotzkey] is interested in pursuing legal services, . . . he [must] do so prior to [February 3, 2017]." *Id.* at 6.

On February 3, 2017, Wisotzkey appeared at the forfeiture hearing without counsel. When the Trial Court remarked that Wisotzkey was again without counsel, Wisotzkey stated, "Yes, Your Honor. That's true. I thank you for the referral [of counsel]. I contacted them but I got no response from the lawyers referral service." N.T., 2/3/17, at 5. Wisotzkey did not request additional time to obtain counsel, and the hearing proceeded without objection.

Both Officer Bruckhart and Wisotzkey testified at the February 3, 2017 hearing. At the conclusion of the hearing, the Trial Court granted the Commonwealth's Petition for Forfeiture of all items except the floor jack, the drill, and the hand tools and directed the Commonwealth to return those items to Wisotzkey. Wisotzkey now appeals to this Court.[5]

---

[4] Our Supreme Court has held that indigent claimants are not entitled to court-appointed counsel in civil forfeiture proceedings. *Com. v. $9,847.00 U.S. Currency*, 704 A.2d 612, 617 (Pa. 1997) (holding that the Fourteenth Amendment's due process clause does not provide a constitutional right to the appointment of counsel in civil forfeiture proceedings under the Forfeiture Act).

[5] On appeal from a civil forfeiture proceeding, this Court's review is limited to determining whether the Trial Court's findings of fact are supported by substantial evidence and whether the Trial Court abused its discretion or committed an error of law. *Com. v. $301,360.00 U.S. Currency*, 182 A.3d 1091, 1096 n.9 (Pa. Cmwlth. 2018).

**Analysis**

On appeal, Wisotzkey raises the following issues:[6] (1) whether the Commonwealth failed to timely serve the Petition for Forfeiture on Wisotzkey; (2) whether the Trial Court erred in finding that Wisotzkey requested a continuance at the December 20, 2016 forfeiture hearing; (3) whether the forfeiture hearings were time-barred; (4) whether the Trial Court incorrectly advised Wisotzkey at the February 3, 2017 forfeiture hearing that he was precluded from "rehashing" the merits of his suppression motion from the underlying criminal case; and (5) whether the Trial Court erred in granting the Petition for Forfeiture as to certain seized items because the Commonwealth failed to prove a substantial nexus between the items and any illegal drug activity.

**1. Service of Petition for Forfeiture**

Wisotzkey first asserts that the Commonwealth failed to timely serve him with the Petition for Forfeiture. Although Wisotzkey does not specifically reference due process in his brief, he is effectively claiming that his due process rights were violated by the late service.

To comply with due process in a forfeiture proceeding, the Commonwealth must provide the property owner "with adequate notice and an opportunity to be heard." *Com. v. All That Certain Lot or Parcel of Land Located at 605 Univ. Drive*, 104 A.3d 411, 426 n.17 (Pa. 2014); *see also Com. v. Mosley*, 702 A.2d 857, 860 (Pa. 1997) (recognizing that "notice and [an] opportunity to be heard are integral to forfeiture proceedings").

Here, although it appears that the Commonwealth failed to properly serve Wisotzkey at the time it filed its Petition for Forfeiture, *see supra* note 2, Wisotzkey

---

[6] In his Statement of Questions Involved, Wisotzkey presents numerous issues and sub-issues, which we have re-worded and re-organized for clarity.

concedes that the Commonwealth served the Petition on him after the April 25, 2016 hearing in his criminal case. *See* Am. 1925(b) Stmt., ¶ I(C)(2)(b). Wisotzkey subsequently appeared at both forfeiture hearings, cross-examined the Commonwealth's witness, and presented his own testimony and argument before the Trial Court. Thus, Wisotzkey was not denied the opportunity to be heard, nor does he allege that he was prejudiced in his ability to defend against the Petition for Forfeiture by the late service. Therefore, we find no due process violation.

### 2. Continuance of December 20, 2016 Hearing

Wisotzkey asserts that the Trial Court erroneously construed his statements at the December 20, 2016 hearing as a request for a continuance of the forfeiture hearing. Wisotzkey's only discussion of this issue is the following sentence: "[Wisotzkey] did not submit a Motion for Continuance or *move* the [Trial] Court for a continuance." Wisotzkey's Br. at 10 (emphasis in original). While it is true that Wisotzkey did not explicitly request a continuance, Wisotzkey clearly acquiesced to the continuance by informing the Trial Court that he wished to have counsel for the forfeiture proceeding. *See* N.T., 12/20/16, at 5. Moreover, Wisotzkey fails to explain in his brief how he was prejudiced by the continuance, particularly where the record shows that the sole purpose of the continuance was to allow him to obtain counsel. *See* N.T., 12/20/16, at 3-5; Trial Ct. Op., 11/22/17, at 9-10; *see also* N.T., 2/3/17, at 5. Therefore, we conclude that this claim lacks merit.

### 3. Timeliness of Forfeiture Hearings

Next, Wisotzkey contends that the forfeiture hearings were time-barred because both hearings occurred more than two years after the Commonwealth's seizure of the items. We disagree.

Section 5524(5) of the Judicial Code provides that "[a]n **action** upon a statute for a civil penalty or forfeiture **shall be commenced within two years**." 42 Pa. C.S. § 5524(5) (emphasis added). Here, the Commonwealth seized the items on October 14, 2014, and filed its Petition for Forfeiture two months later, on December 11, 2014. Further, Wisotzkey concedes that the Commonwealth served the Petition for Forfeiture on him in April 2016, *see* Am. 1925(b) Stmt., ¶ I(C)(2)(b), which was also within the two-year limitations period. Wisotzkey has cited no legal authority, nor have we found any, requiring that a forfeiture **hearing** must take place within the two-year period for commencing a forfeiture action. Therefore, we reject this claim.

### 4. Trial Court's Statements at February 3, 2017 Hearing

Wisotzkey asserts that the Trial "Court err[ed] in its instruction given to [Wisotzkey] on page 34, lines 11-14 and 22-24 of the Forfeiture Hearing, February 3, 2017" and that Wisotzkey "could not assume from the instruction given . . . that the [Trial] Court 'meant' to advise him [that] he was not allowed to rehash the Suppression Hearing of April 4, 2016." Wisotzkey's Br. at 4, 6. Aside from these two statements, Wisotzkey fails to explain this claim in his brief. The Argument section of his brief contains no discussion whatsoever related to these assertions. Because Wisotzkey failed to develop this claim in any meaningful way for appellate review, it is waived. *See Wirth v. Com.*, 95 A.3d 822, 837 (Pa. 2014) ("Where an appellate brief fails to . . . develop an issue in any . . . meaningful fashion capable of review, that claim is waived.") (quotations omitted); Pa. R.A.P. 2119(a).

### 5. Trial Court's Grant of Petition for Forfeiture

#### a. Items Seized from 420 West Princess Street

Wisotzkey argues that the Trial Court erred in granting the Petition for Forfeiture because the Commonwealth failed to establish a substantial nexus between the

following items seized from 420 West Princess Street and unlawful drug activity: $182 in cash, collectible coins, stamps, property deeds, jewelry, music records, and two stun guns. Wisotzkey does not challenge the forfeiture of the remaining items seized from that property.[7] As such, we limit our analysis to only the specified items.

Section 6801(a)(6)(i)(A) and (B) of the Forfeiture Act provided that the following items may be forfeited to the Commonwealth:

> (A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act [(Drug Act)[8]], and all proceeds traceable to such an exchange.

> (B) Money, negotiable instruments, securities, or other things of value used or intended to be used to facilitate any violation of [the Drug Act].

*Former* 42 Pa. C.S. § 6801(a)(6)(i)(A), (B). Because "the law generally disfavors forfeitures," the Forfeiture Act must "be strictly construed." *Com. v. $301,360.00 U.S. Currency*, 182 A.3d 1091, 1097 (Pa. Cmwlth. 2018) (quotation omitted).

In a forfeiture proceeding, "the Commonwealth bears the initial burden of demonstrating, by a preponderance of the evidence, that a substantial nexus exists between the seized property and a violation of the [Drug] Act." *Com. v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 529 (Pa. 2005). "A preponderance of the evidence is tantamount to a 'more likely than not' standard." *Id.* The Commonwealth may

---

[7] In his brief, Wisotzkey also challenges the forfeiture of his cell phone. Wisotzkey's Br. at 7. However, in the Trial Court, Wisotzkey challenged only the seizure of $182 in cash, collectible coins, property deeds, jewelry, stamps, music records, and stun guns from 420 West Princess Street. *See* N.T., 2/3/17, at 37; *see also* O.R., Item No. 16, at 2. Therefore, Wisotzkey has waived his challenge to the forfeiture of his cell phone. *See* Pa. R.A.P. 302(a); *Com. v. $4,000.00 in U.S. Currency*, 49 A.3d 21, 23 n.4 (Pa. Cmwlth. 2012).

[8] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101 to 780-144.

9

satisfy its burden by circumstantial evidence, but it must show "more than a mere suspicion of a nexus." *$301,360.00 U.S. Currency*, 182 A.3d at 1097. If the Commonwealth establishes a substantial nexus, then the burden shifts to the claimant to prove that he or she owns the property, lawfully acquired the property, and did not unlawfully use or possess it. *Id.*; *Former* 42 Pa. C.S. § 6802(j).

### (1) $182 in Cash

First, Wisotzkey challenges the forfeiture of $182 in cash found in various locations within the 420 West Princess Street residence. When money is found "in close proximity" to drugs, a rebuttable presumption arises that the money is related to illegal drug activity. *Former* 42 Pa. C.S. § 6801(a)(6)(ii).[9] The Commonwealth may satisfy its burden of demonstrating a substantial nexus between the money and unlawful drug activity by relying solely on the close-proximity presumption. *Com. v. $34,440.00 U.S. Currency*, 174 A.3d 1031, 1040 (Pa. 2017). If the Commonwealth establishes the requisite nexus, then the burden shifts to the claimant to prove he or she owns the money, acquired it lawfully, and did not unlawfully use or possess it. *Com. v. $16,208.38 U.S. Currency Seized From Holt*, 635 A.2d 233, 235 (Pa. Cmwlth. 1993).

With regard to the $182 in cash, Officer Bruckhart testified on direct examination that the officers recovered the cash from two locations inside the 420 West Princess Street residence—$40 from the top of a second-floor dresser and $142 from the top of a desk in the living room. N.T., 2/3/17, at 12. Critically, Officer Bruckhart did not testify that drugs were present in either of those areas or that the cash was packaged in a manner suggestive of drug proceeds. *See id.* While Officer Bruckhart

---

[9] Section 6801(a)(6)(ii) of the Forfeiture Act provided: "Such money and negotiable instruments found in close proximity to controlled substances possessed in violation of [the Drug Act] shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of the [Drug Act]." *Former* 42 Pa. C.S. § 6801(a)(6)(ii).

testified that "a small amount of marijuana" was found inside the residence, *id.* at 24, he did not specify where the marijuana was located.[10]

On cross-examination, Officer Bruckhart stated that the officers seized the cash because it "was in close proximity to marijuana." *Id.* at 23. Aside from Officer Bruckhart's isolated statement on cross-examination, however, there is no evidence of record showing that the $182 in cash was, in fact, near any of the marijuana recovered from the residence. Significantly, the inventory receipts entered into evidence do not identify where in the multi-story residence the "Ziploc bags of suspected marijuana" were found. *Id.*, Cmwlth. Ex. 2. Simply because Officer Bruckhart uttered the words "in close proximity," with no other testimony or evidence to support that assertion, is insufficient to invoke the presumption in Section 6801(a)(6)(ii) the Forfeiture Act. *See Com. v. $26,556.00 Seized From Polidoro*, 672 A.2d 389, 392 (Pa. Cmwlth. 1996) ("As to William Polidoro, the drugs found in the basement of a building in which he was located were not in such close proximity or sufficiently connected to the cash found in his pants pocket so as to constitute proof that such cash was drug proceeds."); *see also $34,440.00 U.S. Currency*, 174 A.3d at 1037 (finding that money and drugs were "in close proximity" where "both were found within arm's-length of each other inside the vehicle," thereby triggering Forfeiture Act's rebuttable presumption).[11]

---

[10] According to Officer Bruckhart, "I would say we found less than 30 grams of marijuana at [Wisotzkey's] house." N.T., 2/3/17, at 24.

[11] Our Supreme Court has considered a similar issue in the criminal context. In *Commonwealth v. Hanson*, 82 A.3d 1023 (Pa. 2013), the Supreme Court addressed the meaning of the phrase "in close proximity" in the mandatory minimum sentence provision for firearm possession in Section 9712.1(a) of the Sentencing Code, 42 Pa. C.S. § 9712.1(a). The *Hanson* Court "agree[d] with those jurisdictions which have defined 'in close proximity' as 'very near.'" 82 A.3d at 1038. The Supreme Court held that while "courts considering close proximity for purposes of Section 9712.1(a) [of the Sentencing Code] should not be unduly restrictive," they "should not be applying an 'expansive' approach." *Id.* Therefore, the Supreme Court rejected the Commonwealth's theory

11

Officer Bruckhart also testified on cross-examination that the officers seized the cash because they had previously "sent artificial funds into [Wisotzkey's] house," referring to controlled drug buys that pre-dated the execution of the search warrants. N.T., 2/3/17, at 23. However, when asked whether the officers recovered any of the pre-recorded buy money during the search, Officer Bruckhart replied, "I don't think we recovered any." *Id.* We conclude that the Commonwealth failed to establish a substantial nexus between the $182 in cash seized from 420 West Princess Street and unlawful drug activity. *See Com. v. $9,000 U.S. Currency*, 8 A.3d 379, 388 (Pa. Cmwlth. 2010) (recognizing that "[i]t is not against the law to carry cash"). Because the Commonwealth failed to satisfy its initial burden, the burden of proving lawful ownership of the cash never shifted to Wisotzkey. Thus, the Trial Court erred in forfeiting the $182 in cash to the Commonwealth.

### (2) Collectible Coins

Next, Wisotzkey challenges the forfeiture of collectible coins seized from the 420 West Princess Street residence.[12] Officer Bruckhart testified that, based on his investigation, he did not believe Wisotzkey was employed or had a source of income aside from the marijuana-growing operation. N.T., 2/3/17, at 8. Officer Bruckhart opined that the collectible coins were "just a store of value" and stated that the officers

---

that drugs and a handgun were "in close proximity" to each other when they were found in different rooms on the same floor of a two-story house, where "the Commonwealth had not developed much detail concerning the closeness . . . of the handgun and the drugs." *Id.* at 1028, 1038-39. In so holding, the Court noted that penal statutes, like the civil Forfeiture Act, are to be strictly construed. *Id.* at 1038 n.21.

[12] There is a discrepancy in the record regarding where the collectible coins were located. Officer Bruckhart testified that the coins were "in the Igloo cooler." N.T., 2/3/17, at 17. According to the inventory receipts, however, the "misc[ellaneous] coins" were located inside an "under[-]bed drawer" in a second-floor bedroom, and the Igloo cooler contained only "stamps and 45 records." *Id.*, Cmwlth. Ex. 2.

seized them "because [they] believe[d] that was where some of the drug proceeds were stored." *Id.* at 17. Officer Bruckhart explained:

> [T]here were [sic] several hundred thousand dollars worth of marijuana there and only 100 some dollars worth of cash, so I would believe that any proceeds would have been stored in some way. Sometimes it's vehicles, bank accounts, electronics, but there was no evidence of that occurring. **So the only thing of value in the residence was the coins.**
>
> . . .
>
> **I believe that [Wisotzkey was] making potentially hundreds of thousands of dollars selling marijuana, yet had nothing of value other than the coins.**

*Id.* at 18-19 (emphasis added). Officer Bruckhart offered no other testimony regarding the collectible coins.[13]

In his brief, Wisotzkey cites *Commonwealth v. $4,000.00 in United States Currency*, 49 A.3d 21 (Pa. Cmwlth. 2012), in support of his claim that the Commonwealth failed to prove a substantial nexus between the coins and drug activity. In that case, police officers executed a search warrant at the claimant's residence and seized, among other items, a flat-screen television. *Id.* at 22-23. At the forfeiture hearing, the detective testified that he believed that the claimant must have purchased the television with drug proceeds because the claimant was unemployed at the time of his arrest. *Id.* at 24. The detective testified, however, that he did not know when or how the claimant acquired the television. *Id.* On appeal, this Court reversed the Trial Court's forfeiture of the television to the Commonwealth, concluding:

---

[13] Notably, the Commonwealth proffered no evidence regarding the type of coins seized or the estimated value of the seized coin collection.

> While it is true that an otherwise legal item can become derivative contraband if it is tied to illegal drug activity, **the Commonwealth here offered no proof of a nexus between the television and [the claimant's] drug activity.** Detective Boyer testified that he "assumed" [the claimant] acquired the television in a drug transaction because [he] did not have a job at the time of his arrest; however, Detective Boyer also admitted that he did not know when [the claimant] acquired the television. **Absent any evidence as to when or how [the claimant] came to possess the television, we conclude that the Commonwealth failed to prove that it was more likely than not that the television was derived from [his] drug activity.**

*Id.* at 24-25 (emphasis added).

Here, Officer Bruckhart testified that the collectible coins "were the only thing[s] of value" in Wisotzkey's residence and that he believed the coins were purchased with drug proceeds because Wisotzkey was not employed at the time of the seizure. N.T., 2/3/17, at 8, 17-19. Like the detective in *$4,000 in United States Currency*, Officer Bruckhart offered no evidence as to when or how Wisotzkey came to possess the coins. In fact, Officer Bruckhart admitted that he had "no idea" when Wisotzkey acquired the coins and that they "[c]ould be" family heirlooms. *Id.* at 19. The Commonwealth's attorney also did not question Wisotzkey about his possession of the coins when he took the witness stand. Therefore, we conclude that Officer Bruckhart's testimony was insufficient to prove a substantial nexus between the coins and illegal drug activity. *See also Singleton v. Johnson*, 929 A.2d 1224, 1227 (Pa. Cmwlth. 2007) (stating that the Commonwealth must prove "a specific nexus between the property and the criminal activity"); *Com. v. One 1985 Dark Blue Mercedes Benz Car*, 571 A.2d 482, 485 (Pa. Super. 1990) (concluding that forfeiture of the claimant's vehicle was improper because the Commonwealth failed to prove the claimant used the vehicle to facilitate a drug transaction or that the claimant purchased the vehicle with drug proceeds).

14

Because the Commonwealth failed to meet its initial burden of establishing a substantial nexus between the coins and illegal drug activity, the burden never shifted to Wisotzkey to prove his lawful ownership of the coins. Therefore, we conclude that the Trial Court erred in forfeiting the collectible coins to the Commonwealth.

**(3) Property Deeds, Jewelry, Stamps, Music Records, and Two Stun Guns**

The property deeds, jewelry, stamps, music records, and two stun guns seized from 420 West Princess Street are not contraband *per se*. To obtain the forfeiture of those items, the Commonwealth was required to show, by a preponderance of evidence, that they were derivative contraband. *Polidoro*, 672 A.2d at 392. "Derivative contraband is property that is, of itself, amenable to legal use but has been used [to perpetrate] an unlawful act or for unlawful purposes." *Id.* at 392 n.6. However, "property is not derivative contraband merely because it is owned by . . . a drug offender for legitimate purposes." *Mercedes Benz Car*, 571 A.2d at 485.

With regard to the property deeds, jewelry, stamps, music records, and stun guns seized from 420 West Princess Street, Officer Bruckhart offered no testimony whatsoever establishing a connection, let alone a substantial nexus, between any of those items and unlawful drug activity. Our Court has stated:

> Objects do not acquire "guilt by association" merely because they are owned by a person who has been engaged in criminal conduct. The Commonwealth cannot deprive a person of his or her property and thereby impose a penalty upon him by seizing his property without showing that the property was derived from or was used to further criminal activity. The requirement that a sufficient nexus exist between the property and the prohibited criminal activity serves to mitigate the potentially harsh results of permitting the Commonwealth to penalize a citizen by a civil action against his property rather than a criminal action against his person.

15

*$4,000.00 in U.S. Currency*, 49 A.3d at 24 (quoting *Mercedes Benz Car*, 571 A.2d at 485); *see also Polidoro*, 672 A.2d at 392 ("Although it can become derivative contraband if it is connected with illegal drug activity, [here] the Commonwealth failed to offer even a scintilla of evidence that the [claimant's] automobile had been used in the conduct of or to further illegal drug transactions.").

Because the Commonwealth failed to satisfy its initial burden of proving a substantial nexus between the property deeds, jewelry, stamps, music records, and stun guns[14] and illegal drug activity, the burden of proving lawful ownership of the items never shifted to Wisotzkey. We conclude that the Trial Court erred in forfeiting these items to the Commonwealth.

### b. Items Seized from 223 South Mill Lane

In the Argument section of his brief, Wisotzkey also asserts that "[t]he Commonwealth failed to prove, by a preponderance of the evidence, [Wisotzkey's] knowledge[] and consent in the misuse of" the garage at 223 South Mill Lane as a marijuana-growing operation, Wisotzkey's Br. at 8, presumably referring to the "innocent owner" defense. *See Former* 42 Pa. C.S. § 6802(j)(3). However, because Wisotzkey did not raise this issue in his Statement of Questions Involved, it is waived. *See* Pa. R.A.P. 2116(a).[15]

---

[14] We recognize that Wisotzkey was convicted of persons not to possess firearms under Section 6105(a) of the Crimes Code, 18 Pa. C.S. § 6105(a). However, a stun gun does not fall within the definition of a "firearm" in Section 6105(i) of the Crimes Code, which provides: "As used in this section only, the term 'firearm' shall include any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa. C.S. § 6105(i). In any event, the Commonwealth does not argue that Wisotzkey was prohibited from possessing the stun guns; it argues only that the stun guns were derivative contraband. *See* O.R., Item No. 2, at 2; Cmwlth.'s Br. at 16.

16

## Conclusion

We conclude that the Commonwealth failed to establish a substantial nexus between the following items seized from 420 West Princess Street and any unlawful drug activity: $182 in cash, collectible coins, property deeds, jewelry, stamps, music records, and two stun guns. Accordingly, we reverse the Trial Court's Order to the extent that it forfeited those items to the Commonwealth and affirm the remainder of the Trial Court's Order.

_____
ELLEN CEISLER, Judge

---

[15] Even if this claim was not waived, Wisotzkey's own statements at the forfeiture hearing contradict his assertion that he was unaware of the marijuana-growing operation at 223 South Mill Lane.

> [WISOTZKEY]: You made a statement [to me] that there was possibly 100 marijuana plants in the building next door?
>
> [OFFICER BRUCKHART]: I did make that statement, yes.
>
> [WISOTZKEY]: And I responded by saying you better check your math?
>
> [OFFICER BRUCKHART]: That's correct.
>
> [WISOTZKEY]: And then I corrected myself and stated, I mean, what marijuana plants, did I not?
>
> [OFFICER BRUCKHART]: Correct.

N.T., 2/3/17, at 29. Furthermore, contrary to Wisotzkey's assertion, the burden of proving an "innocent owner" defense is on the forfeiture claimant, not the Commonwealth. *See Com. v. $2,523.48 U.S. Currency*, 649 A.2d 658, 660 (Pa. 1994).

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania :
:
      v. : No. 299 C.D. 2017
:
$182.00 Cash, et. seq. :
:
Appeal of: Matthew Wisotzkey :

## O R D E R

AND NOW, this 12th day of September, 2018, we hereby REVERSE the Order of the Court of Common Pleas of York County, dated February 3, 2017, to the extent that it granted the Commonwealth of Pennsylvania's Petition for Forfeiture of $182 in cash, collectible coins, property deeds, jewelry, stamps, music records, and two stun guns to the Commonwealth and order that those items be returned to Matthew Wisotzkey. We hereby AFFIRM the remainder of the Trial Court's Order.

_____
ELLEN CEISLER, Judge